UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INTEX RECREATION CORPORATION,

Plaintiff/Counterclaim-Defendant,

v.

TEAM WORLDWIDE CORPORATION,

Defendant/Counterclaim-Plaintiff.

Civil Action No. 04-1785
PLF/DAR

## MEMORANDUM OPINION AND ORDER

Defendant Team Worldwide ("TWW") Corporation's Motion for Claim Construction

(Document No. 140) is pending for determination by the undersigned.  Upon consideration of the

motion; the memoranda in support thereof and in opposition thereto;[1] the proffers and arguments

of counsel at the hearing on the motion; the parties' Joint Statement of Undisputed Claim

Construction Evidence (Document No. 142) ("Joint Statement"),  and the entire record herein,

Defendant's motion will be **GRANTED IN PART**.

## I. BACKGROUND OF THE INSTANT ACTION

Intex Recreation Corporation ("Intex") is a California corporation engaged in the business

of the distribution and sale of a variety of inflatable products, including air mattresses.  *See*

---

[1] Defendant Team Worldwide Corporation's Memorandum in Support of its Motion for Claim Construction (Document No. 140, Part 4) ("TWW's Mem."); Plaintiff Intex Recreation Corp.'s Claim Construction Brief (Document No. 141) ("Intex's Brief").  *See also* Joint Statement of Disputed Claim Terms and Phrases (Document No. 138).

Intex Recreation Corp. v. Team Worldwide Corp.                                     2

Motion of Intex Recreation Corp[.] for Order Under Rule 56, Federal Rules of Civil Procedure

that the Accused Products Do Not Infringe Claims 14-17 of the Patent-in-Suit (Document No.

101) at 2, n.2.

On September 21, 2004, the United States Patent and Trademark Office ("USPTO")

issued U.S. Patent No. 6,793,469 ("the '469 patent"), of which TWW is the owner by

assignment.  First Amended Complaint (Document No. 4) at 1; Intex's Brief at 1.  On about

October 8, 2004, Intex received a letter from TWW in which TWW alleged that Intex had

infringed the '469 patent by selling an inflatable air mattress with a built-in pump.  First

Amended Complaint, ¶7.  Intex denies that its products infringe the '469 patent, and seeks a

declaratory judgment that the '469 patent has not been infringed and that said patent is invalid

pursuant to 35 U.S.C. §§ 102, 103.  First Amended Complaint, ¶¶ 7-11, 12-15.[2]

_____TWW, in its answer, denies that Intex is entitled to any relief.  In its counterclaim, TWW

alleges that Intex has infringed, and continues to infringe, one or more claims of the '469 patent

by unlawfully making, using, importing, selling , and/or offering for sale, inflatable mattress

covered by one or more claims of the '469 patent.  Answer (Document No. 10), ¶¶ 10-11, 14-15,

19-20; Counterclaim (Document No. 10), ¶¶ 8-10.

In its answer to the counterclaim, Intex denies TWW's allegations, and alleges as

affirmative defenses that TWW failed to state a claim upon which relief can be granted, and that

the patent is invalid pursuant to 35 U.S.C. §§ 102, 103.  Answer to Counterclaim (Document No.

---

[2]  Intex's claim that the patent is unenforceable as a result of the alleged inequitable conduct of TWW was dismissed by the court.  *See* September 30, 2005 Memorandum Opinion (Document No. 20) at 1, 8.

Intex Recreation Corp. v. Team Worldwide Corp.                                    3

15), ¶¶ 12, 14.[3]

Following proceedings with respect to the conduct of discovery and other pretrial matters, TWW moved the court "to construe the claim terms of U. S. Patent No. [6],793,469 according to Exhibit A of this Motion."  Defendant Team Worldwide Corporation's Motion for Claim Construction at 1; *see also* Joint Statement of Disputed Claim Terms and Phrases (Document No. 138) at 3.


## II. STANDARDS GOVERNING CLAIM CONSTRUCTION

Claim construction is a question of law for the court.  *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 384 (1996).  "In construing patent claims, a court must start with the claim language and consider it in light of the specification and prosecution history, and if necessary use extrinsic evidence . . . to clarify any remaining ambiguity."  *Michilin Prosperity Co. v. Fellowes Mfg. Co.*, 450 F. Supp. 2d 35, 37 (D.D.C. 2006).  In construing the claims, it is "the person of ordinary skill in the field of the invention through whose eye the claims are construed." *Multiform Desiccants, Inc., v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998).  In its interpretation of disputed claim terms, a court "should look first to the intrinsic evidence of record, *i.e.,* the patent itself, including the claims, the specification, and if in evidence, the prosecution history."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). There is a "heavy presumption" that the terms used in the claims "mean what they say and have the ordinary meaning that would be attributed to those words by persons skilled in the relevant

---

[3] The affirmative defense that the patent is unenforceable by reason of TWW's alleged inequitable conduct was stricken by the court. *See* n.2, *supra*.  Additional affirmative defenses were subsequently pled. *See* First Amended Answer of Counterclaim Defendant Intex Recreation Corp. to Counterclaim (Document No. 127).

Intex Recreation Corp. v. Team Worldwide Corp.                                                    4

art." *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202 (Fed. Cir. 2002); *see also*

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).

        In its evaluation of the intrinsic evidence, a court may consult a dictionary and the

inventor's drawings.  *Intex Recreation Corp. v. Metalast*, 245 F. Supp. 2d 65, 69 (D.D.C. 2003).

"Dictionary definitions . . . are valuable resources to be used by a court at any time to assist in

determining the ordinary meaning of claim language." *Id.* (citations omitted).  "Because words

often have multiple dictionary definitions, some having no relation to the claimed invention, the

intrinsic record must always be consulted to identify which of the different possible dictionary

meanings of the claim terms in issue is most consistent with the use of the words by the

inventor." *Texas Digital Sys.*, 308 F.3d at 1203 (citations omitted).  "[T]he presumption in favor

of a dictionary definition will be overcome where the patentee, acting as his or her own

lexicographer, has clearly set forth an explicit definition of the term different from its ordinary

meaning." *Id.* at 1204 (citations omitted).  A court may consult the drawings "because drawings

may graphically support the proper interpretation of the claim language." *Intex,* 245 F. Supp. 2d

at 69 (citing *Desper Products, Inc. v. Q Sound Labs, Inc.*,) 157 F.3d 1325, 1333 (Fed. Cir.

1998)).[4]

        This court has observed that "if the meaning [of a disputed claim term] is sufficiently

clear from the intrinsic evidence, that meaning shall apply[,]" and that "extrinsic evidence may

be considered only when the claim language remains genuinely ambiguous after consideration of

the intrinsic evidence." *Intex,* 245 F. Supp. 2d at 69 (citing *Frank's Casing Crew Rental Tools,*

---

        [4] Upon consideration of this general standard, another judge of this court aptly observed that "[c]laim
construction requires a degree of imagination from the Court." *Thomson Consumer Electronics, Inc. v. Innovattron,
S.A.*, 43 F. Supp. 2d 26, 29 (D.D.C. 1999).

*Inc. v. PMR Technologies, Ltd.*, 292 F.3d 1363, 1374 (Fed. Cir. 2002); *Bell & Howell Doc.*

*Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 705-706 (Fed. Cir. 1997).  However, extrinsic

evidence "may not be used to vary or contradict the claim language." *Vitronics*, 90 F.3d at 1584;

*accord, Texas Digital Sys.*, 308 F.3d at 1212.

A technical term will generally be assigned the ordinary meaning that it would be given

by one skilled in the art, unless 'it is apparent from the patent and the prosecution history that the

inventor used the term with a different meaning.'" *Intex*, 245 F. Supp. 2d at 68 (citing *Phillips*

*Petroleum v. Huntsman Polymers*, 157 F. 3d 866, 871 (Fed. Cir. 1998)).  "Deviation from the

ordinary meaning of claim terms requires clear evidence . . . ." *Id*.  Only when it appears that an

inventor assigned a different meaning to the words in a claim than the ordinary meaning can the

court adopt that other meaning.  *Id*.  (citation omitted).


## III. DISCUSSION

The technology at issue in this action "is inflatable mattresses which are sold to

consumers, to the consuming public, and that are inflated by the use of an electrical air pump."

Transcript of Markman Hearing, June 26, 2007 (Document No. 143) ("June 26, 2007 Tr.") at 21.

The disputed claim terms and phrases are (1) "socket"; (2) "electric pump"; (3) "connector"; (4)

"inflatable body"; (5) "pump body"; (6) "air outlet"; (7) "connected to"; (8) "received" and (9)

"matched[.]"  Joint Statement of Disputed Claim Terms and Phrases at 3.  Neither party called

witnesses at the *Markman* hearing, and instead, each side relied upon the exhibits offered into

evidence and counsel's arguments with respect to the exhibits.  *See* June 26, 2007 Tr. at 9.  The

proffers and arguments of counsel for the parties, and the undersigned's findings with respect to

Intex Recreation Corp. v. Team Worldwide Corp.                                                          6

each disputed term and phrase, are discussed in turn.

      *A. "socket"*

      The term "socket" is used in claims 14–17.  Plaintiff contends that term means "a

structure that fits and holds onto an inserted part . . . so that the structure and the part are

detachably connected to each other."  Intex's Brief at 26.  Plaintiff contends that the

embodiments of the pump and socket make it clear the pump is fitted in, put in or screwed

together with the socket.  *Id.*  Plaintiff also cites the summary of the invention in the '469

patent's specification in support of its proposed definition of socket, which provides that a pump

is "detachably connected to the socket to pump the airbed."  *Id.*  Plaintiff also argues that the

court should reject the more expansive definition proposed by Defendant because in the '469

patent, Plaintiff contends that a "chambers" or "chamber device," which Defendant includes in

the definition of "socket," is an opening or hollow for an inserted part that is not "detachably

connected," unlike parts placed in the "socket."  *Id.* at 28-32.  Plaintiff contends that Defendant

now seeks *post hoc* to expand the meaning of "socket" to encompass the meaning of "opening or

hollow that forms a holder for something," which it has already attributed to "chamber."  *Id.* at

29.  Referring to Figs. 2 and 13A in the '469 patent, the Plaintiff contends that by using "socket"

and "chamber" to refer to separate and distinct concepts, the court must construe them as having

different meanings, as the court similarly did in *Bell Atlantic Network Services, Inc., v. Covad

Commc'ns Group, Inc., 262 F.3d 1258* (Fed. Cir. 2001).  *Id.* at 28.   Plaintiff also contends that

the prosecution history shows that the Defendant and the examiner repeatedly used the phrase

"socket" to mean a structure that fits and holds onto a detachable pump.  *Id.* 34-35.  Plaintiff also

relies on two dictionary definitions: "an opening or a cavity into which an inserted part is designed to fit: a light bulb socket": and a "device designed to receive and grip the end of a tubular object, such as a tool or pipe." *Id.* at 36 (citing American Heritage College Disctionary 1292 (3d ed. 1997); McGraw-Hill Dictionary of Scientific and Technical Terms 1853 (5th ed. 1994).

Defendant contends that its proposed construction uses the ordinary and customary meaning of "socket" and is supported by dictionary definitions, which the court can apply to determine the ordinary meaning of a term.  TWW's Mem. at 14.  Defendant submits that its proposed construction is taken from Webster's Ninth New Collegiate Dictionary (1991), where a "socket" is defined as "an opening or hollow that forms a holder for something." *Id.*  Defendant contends that "socket" does not have any technical meaning, and that the Dictionary of Mechanical Engineering defines it as "a hollow for something to fit into, or stand firm, or revolve in." *Id.*  Defendant contends that the claims only require that the pump be connected to the socket, and that the term should not be construed in a manner as limited as Plaintiff suggests. *Id.* at 15.  Defendant acknowledges that Plaintiff contends that the embodiments show that the socket is for something that is detachably connected; however, Defendant contends that embodiments do not limit the claims to those embodiments, and that the patent specification it explicitly states that the invention was not limited to those embodiments. *Id.*  Defendant submits that the Plaintiff's proposed construction requiring that a part inserted must be "detachably connected" is not supported by intrinsic or extrinsic evidence. *Id.* at 18.  The Defendant submits that the '469 patent is derived from U.S. Patent No. 6,332,760 ("760 patent"), the claim of which state that the electric pump is "detachably connected to the socket pump[,]" the court should

interpret the claims consistently.  *Id.* at 19 (citing *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d

1282, 1293 (Fed. Cir. 2005).

      The undersigned has carefully considered the intrinsic evidence, including the dictionary

definitions submitted by the parties.  *See Intex Recreation Corp.*, 245 F. Supp. 2d at 68.  The

undersigned finds that the embodiments in the '469 patent do not limit the claims, as expressly

stated in the patent.  See *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005);  U.S.

Patent No. 6,793,469 at 7:14-23.  In the '760 patent, the Defendant expressly used the term

"detachably connected," but in the '469 patent term is not used.  The undersigned did not find

anything in the intrinsic evidence that requires a part inserted into the socket to be "detachably

connected" and therefore finds, as Defendant proposed, that the term socket, in its ordinary

meaning, is an opening or hollow that forms a holder for something.

      *B. "pump body"*

      The Plaintiff contends that "pump body" refers to the covering of the parts of the pump in

the '469 patent. Intex's Brief at 18.  Plaintiff relies on the claim language in support of its

proposed construction: "an electric pump, including a pump body and an air outlet, connected to

the socket to pump the inflatable body."  *Id*.  Plaintiff contends that Defendant's proposed

construction is contrary to the '469 patent's claim language and specification, more specifically,

Plaintiff contends that claims 14 and 16 require the pump to be wholly or partially inserted, but

in Fig. 3A, it appears that what would be considered the main part of the pump is located outside

of the socket.  *Id*. at 23-24.  Plaintiff argues that Defendant fails to articulate how the main part

of the pump, which it calls the "pump body," differs from the pump itself, or any single part of

Intex Recreation Corp. v. Team Worldwide Corp.                                    9

the pump, or any combination less than all of the parts that make up the pump.  *Id*. at 24.

Plaintiff also contends that Defendant has used the term "pump body" in the same matter that

Plaintiff defines it in a related patent application.  *Id*. at 21-23.

Defendant contends that "pump body" has no special technical meaning and that it is

widely accepted that "body" means main or central part. TWW Mem.  at 21 (citing The

American Heritage Dictionary of the English Language (2000)).  Defendant contends that the

Plaintiff's proposed construction ignores the intrinsic record, the relevant extrinsic record, and

the law of claims construction  *Id*. at 22.  Defendant observes that the examiner originally

rejected the claims, and that Defendant had to amend its claims to make it clear that the electric

pump consisted of a pump body and an air outlet, and that the pump body is wholly or partially

disposed in the socket.  *Id*. at 24 (citing Forman Decl. Ex. 2, TWW 000358-60).

The undersigned finds that the construction proposed by the Plaintiff is unwarranted.  In

reviewing the patent and the prosecution history, the undersigned finds that the construction

proposed by Defendant - - that a pump body is the main part of the pump -- is consistent with the

law governing claims construction.  The '469 patent includes the phrase ". . . an electric pump,

*including* a pump body and an air outlet . . . ."  (emphasis added).  The court finds that the

electric pump refers to everything including the housing, which also includes the pump body

referring to the parts that actually make the pump.  *See* '460 Patent, claim 14; Fig 2, 3A.

Therefore the ordinary meaning to a person skilled in the art of pumps, would consider pump

body to mean the main part of the pump.

Intex Recreation Corp. v. Team Worldwide Corp.                                          10

C. *"electric pump"*

Plaintiff contends that "electric pump" refers to an electrically powered device that is made up of components, which cooperate together to inflate or deflate the inflatable body. Intex's Brief at 39.  In proposing this construction, the Plaintiff refers to the claim language itself, "electric pump . . . to pump the inflatable body," and suggests that in order for the electric pump to do so, it must include certain components to be able to "pump."

Defendant contends that an electric pump is " an electronically powered machine or device for raising, compressing, or transferring fluids, including gases[,]" referring to the definition found in The American Heritage Dictionary of the English Language (2000).  TWW's Mem. at 25.

The parties' proposed constructions are very similar.  Plaintiff's proposed construction does not mention gases or fluids, yet Plaintiff does not dispute that a pump can act upon gases and fluids.  *See* Intex's Brief at 39.  However, the undersigned does not see anything in the record which would warrant a finding that the ordinary meaning to those skilled in the art would be that an electric pump could only be used to inflate or deflate an inflatable body.  Accordingly, the undersigned finds that the Defendant's proposed construction is the proper one.

D. *"air outlet"*

Plaintiff's proposed construction for air outlet is "a passage that permits air to travel out of the pump."  Intex's Brief at 40.  Plaintiff relies on the American Heritage College Dictionary definition of outlet: "passage for escape or exit; a vent."

Defendant's proposed construction for air outlet is "hole from which air emerges."

Intex Recreation Corp. v. Team Worldwide Corp.                                    11

TWW's Mem. at 25.  However, Defendant characterizes the differences between the parties'

proposed constructions as "trivial[,]" and represents that it conditionally offered to accept

Plaintiff's proposed construction.  *Id.*

   The undersigned, after reviewing the patent and the dictionary definition, finds that the

proposed construction by Plaintiff is the correct one.  Indeed, Defendant offers no evidence or

authority in support of its proposed construction.


   *E.  "connected to"*

   Plaintiff's proposed construction of "connected to" means that the electric pump must be

"coupled" " or" " joined," not merely touching.  Intex's Brief at 40.  Plaintiff states that the

claims, viewed with the specification and prosecution history,  support its proposed construction.

*Id.*

   Defendant contends that it used connected in a "broad sense" in its patent to mean more

than "just joined[,]" and in support of this construction, Defendant refers to the prior art figures

specifications that states that "the electric pump 14 is connected to the value 12 in direction B

and then rotated in direction A to fasten the connection between the electric pump 14 and airbed

10."  TWW's Brief at 26 (citing U.S. Patent No. 6,793,469 at 1:20-23).  Defendant contends that

this demonstrates that the term "connected to" is broader than "joined[,]" since the valve is

joined after the two are connected.  *Id*.

   The undersigned finds that Plaintiff's proposed construction is the one which is consistent

with the law governing claims construction.  Merriam-Webster Dictionary defines connected as

"joined or linked together."  In reviewing the patent and the intrinsic evidence, the court finds

Intex Recreation Corp. v. Team Worldwide Corp.                                                    12

that a person skilled in the art would consider connected to be more than mere touching.


      F. "*connector*"

      Plaintiff's proposed claim construction for connector is "a structure that is arranged on

the pump as to form a detachable circuit between and outside power source and the pump."

Intex's Brief at 41.  Claim 14 provides that "a connector provided on the electric pump for

connecting an external power to actuate the electric pump."  Plaintiff argues this claim language

supports its proposed construction, where "connector provided on the electric pump" refers to a

"structure" that is on the pump.  *Id*.  Plaintiff contends that "for connecting an external power"

requires that the structure be able to "form a detachable circuit" between the power source and

pump.  The phrase "to actuate the electric pump," Plaintiff contends, requires that the structure

has to be used to activate a motor in the pump.  *Id*.  In additional support of its contention,

Plaintiff cites the American Heritage College Dictionary 295 (3d ed. 1997), which defines

"connect" as "[t]o join to or by means of a communications circuit."  *Id.* at 42.

      Defendant's proposed construction for "connector" is something that permits passage of

electrical current.  TWW's Mem. at 26.  Defendant contends that there is no support in the

intrinsic evidence to support Plaintiff's requirement of "detachable" and "circuit."  *Id*.

      The undersigned has reviewed the language of claim 14 and finds that the proposed

construction by the Defendant is correct.  The claim language which requires a "connector

provided . . . for connecting an external power to actuate the electric pump" means that a

"connector" permits passage of electrical current.

Intex Recreation Corp. v. Team Worldwide Corp.                                    13

    G.  *"matched"*

    Plaintiff's proposed construction of "matched" in claim 16 is that the term refers to an

airtight seal formed between part of the pump and the socket when the pump is inserted into the

socket.  Intex's Brief at 42.  Plaintiff contends the claim language "a portion of the electric pump

is inserted into tile [sic] socket" refers to a part of the pump that has been put inside the socket.

*Id.* at 43.  The phrase "to prevent an air leakage therebetween" refers to an airtight seal between

part of the pump and the socket.  *Id.*

    Defendant's proposed construction is that the term "matched" means geometrically

matched.  TWW's Mem. at 28.  In support of its proposed construction, the Defendant refers to

the specification, particularly the first embodiment, which shows that part of the pump's exterior

is round to provide a "geometric match" to the round interior socket.  *Id*. (citing U.S. Patent

4,793,469 at Fig. 2).  The Defendant also refers to Fig. 4 and Fig. 8D.  *Id.* at 29.

    The claim 16 language at issue is "a portion of the electric pump is inserted into tile [sic]

socket, and the portion of the electric pump and the socket are matched with each other to

prevent an air leakage therebetween."  The undersigned has considered the arguments of both

parties and the intrinsic evidence carefully and also reviewed a dictionary definition.  Merriam-

Webster (on-line) defines "match" as "to fit together or make suitable for fitting together."  The

undersigned finds that for the patent to work, there must be a way to eliminate air leakage; after

reviewing the intrinsic record, the court finds that the construction proposed by Defendant is

consistent with law governing claims construction.

Intex Recreation Corp. v. Team Worldwide Corp.                                    14

    *H. "received"*

    Plaintiff contends that "received" refers to "a pump body that is inserted in the socket

along first and second paths to inflate and deflate the inflatable body, respectively."  Intex's Brief

at 43-44.  The claim language on which Plaintiff relies is the phrase "in a first direction for

inflating[,]" which it interprets as meaning that the pump body must be inserted inside the socket

by moving it along a first path.  *Id.* at 43.  The second phrase "received in a second direction for

deflating" means to deflate the pump has to be inserted inside the socket along a second path.  *Id*.

at 44.

    Defendant contends that "received" means "positioned or oriented."  TWW's Mem. at 27.

Defendant contends that the specification uses the term "received" multiple times to describe the

position or orientation of the pump body in the socket for deflation or inflation, describing in

particularly in the eighth and ninth embodiment.  *Id.*

    The court has reviewed the '469 patent and has looked at the use of "received" in the

patent and the specification.  The court finds that the term "received" refers to "position or

orientation."  *See* U.S. Patent No. 6,793,469 at 6:47-48.  The claim language "pump body can be

received . . . in the socket in a first direction for inflating the inflatable body, and received in a

second direction for deflating . . ." supports the construction that the pump can be positioned one

way to inflate and another to deflate.  Accordingly, it is Defendant's proposed construction of

this term which is consistent with the law of claims construction.


    *I. "inflatable body"*

    Plaintiff contends that the term "inflatable body" refers to a structure that expands or

Intex Recreation Corp. v. Team Worldwide Corp.                                    15

contracts when either air or liquid is drawn into or out of it.  Intex's Brief at 37.  Plaintiff admits

that '469 patent specification does not define "inflatable body," but that the ordinary and

customary meaning is a structure that expands or contracts when air or liquid is drawn into or

out.  *Id*. at 37-38.  Plaintiff contends that it is not required to be airtight, and that it normally is

not considered airtight and that air mattresses are not airtight.  *Id*. at 39.

Defendant contends that "inflatable body" is a substantially airtight structure that expands

when filled with air or other gases.  TWW's Mem. at 27.  The Defendant cites Random House

Webster's Unabridged Dictionary, 2d Ed. (1998) in defining inflatable as "capable of being

inflated; designed or built to be inflated before use, to cause to expand or distend with air or gas."

The Defendant contends that the specifications show that there is an air outlet and therefore no

need to require liquid in the definition.  *Id.*

The court finds that the Defendant's proposed construction for "inflatable body" is the

correct construction.  Plaintiff argues that air mattresses were not airtight; however, Defendant

states that the inflatable body is *substantially* air tight, and does not claim that it is airtight.  The

Defendant's position is not only supported by the intrinsic record and is consistent with the

dictionary definition.  *See* The American Heritage Dictionary of the English Language (2000).

## VI. CONCLUSION

For all of the foregoing reasons, it is **ORDERED** that Defendant Team Worldwide

Corporation's Motion for Claim Construction (Document No. 140) is **GRANTED IN PART**,

and that the following terms and phrases are hereby construed in the manner proposed by

Defendant: "socket"; "pump body"; "electric pump"; "connector"; "matched"; "received"; and

Intex Recreation Corp. v. Team Worldwide Corp.                                        16

"inflatable body[.]"

It is **FURTHER ORDERED** that with respect to the phrases "connected to" and "air

outlet[,]" Defendant's motion is **DENIED**, and that those phrases are hereby construed in the

manner proposed by Plaintiff.

March 28, 2008                                          _____/s/_____
                                                        DEBORAH A. ROBINSON
                                                        United States Magistrate Judge