UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Intex Recreation Corp.,

    Plaintiff/Counterclaim-Defendant,

    v.

Team Worldwide Corporation,

    Defendant/Counterclaim-Plaintiff.

Civil Action No.:  1:04 CV 01785 PLF

**DEFENDANT TEAM WORLDWIDE CORPORATION'S MEMORANDUM IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT**

Defendant Team Worldwide Corporation ("TWW") respectfully submits this

memorandum of points and authorities in support of its motion for summary judgment of

infringement of the asserted claims 14-17 of U.S. Patent No. 6,793,469 ("the '469 patent").

## I.  INTRODUCTION

Because there is no dispute over the structure and operation of the accused products, and

now that claim construction has been finalized, this matter is ripe for summary judgment.

Moreover, as testified to by Intex's expert, Mr. John F. Berninger, Intex does not even dispute

that its products meet every limitation of the asserted claims with the sole exception of the

"socket" limitation.  Thus, the scope of the dispute on summary judgment is narrow.

With regard to the socket limitation, the Court recently construed "socket" to mean "a

structure that fits and holds onto an inserted part, so that the structure and the part are detachably

connected to each other."  As described in detail below, the accused products include a structure

(a "housing," as Intex refers to it) into which the pump is inserted.  This much is also undisputed.

Furthermore, the undisputed evidence clearly shows that the socket structure is geometrically

matched to fit the pump and to hold it in place such that they are detachably connected to each

other.  Accordingly, the accused products meet every limitation of the asserted claims and TWW is entitled to judgment as a matter of law.

## II.  BACKGROUND

The Court is by now familiar with the facts of this case.  Thus, TWW will provide an abbreviated version of the salient background facts.

### A.  Procedural History

Intex initiated this suit on October 15, 2004, seeking declaratory judgments of non-infringement and invalidity as to the '469 patent.  (First Am. Compl. for Declaratory Relief and Patent Invalidity, ECF No. 4.)  For three years, the parties proceeded through fact and expert discovery and, on November 19, 2007, the Court conducted a claim construction hearing.  After the claim construction hearing, Intex filed a Request for *Ex Parte* Reexamination with the U.S. Patent & Trademark Office ("PTO").  Subsequently, on May 1, 2008, after Judge Robinson issued her claim construction opinion, and with TWW's motion for summary judgment of infringement on file, Intex moved to stay the case that it had brought out of deference to the PTO's reexamination procedure.  (Intex Mot. for Stay of Litigation Pending Reexamination, ECF No. 149.)  Once the PTO finished its reexamination, the '469 patent emerged not only intact, but confirmed and entirely unscathed—a rarity in reexaminations.

The claims of the '469 patent were written with an unusual lack of technical jargon for patent claims.  Yet, despite their simplicity—independent claims 14 and 16 have only four and three limitations, respectively—Intex originally contended that no less than ten terms required constructions from the Court.  (*See generally* Plaintiff Intex Recreation Corp.'s Claim Construction Br., ECF No. 141.)  After multiple rounds of claim construction briefing and argument, Intex focuses on the term "socket," a term it has construed at least three different ways

throughout the course of this litigation.[1]  Intex's third construction—"a structure that fits and holds onto an inserted part so that the structure and the part are detachably connected to each other"—was adopted by the Court.  Op. and Order at 14, Sept. 24, 2013, ECF No. 208.

### B.  The '469 Patent

The '469 patent is generally directed to inflatable products, such as air beds for home and camping use, that are inflated with an electric pump.  ('469 Patent at Abstract; Declaration of Andrew R. Kopsidas in Support of Team Worldwide Corp.'s Motion for Summary Judgment of Infringement (hereinafter, "Kopsidas Decl."), Ex. 1.)  The patent explains that prior designs used electric pumps that attached to the exterior of the bed for inflation.  (*Id*. at 1:15-24.)  Tony Wang,[2] the founder of TWW and the inventor of the '469 patent, recognized numerous drawbacks to this approach, drawbacks that would be cured by having a socket built in the inflatable body.

The first of ten examples ("embodiments") of Mr. Wang's approach is shown below in Figure 2 of the patent.  The socket structure is labeled as item 24 (shown in yellow).  In this embodiment, the socket is a donut-shaped ring of material with edges that fit and hold the electric pump 20 (shown in red) when the pump is inserted.  The donut hole (shown in green)

---

[1] Intex's original construction of "socket" was:  "a structure that has a circular cross-section, that is adapted to permit either axial displacement or reverse orientation of the pump body by the user during normal operation without tools, is adapted to permit a seal between the pump body and its containment, and is adapted to receive an integral means of securing the pump body." (Rebuttal Expert Rpt. of John F. Berninger, at 6-7, Jul. 31, 2006; Kopsidas Decl., Ex. 6.) Perhaps recognizing that its construction was wordy and indefensible, Intex later contended that a socket is "a structure that is circular in cross-section, which permits reorientation of the pump body, sealing between the pump body and the inflatable body, and which receives and secures the pump body."  (Mem. In Supp. of Mot. of Intex Recreation Corp. for Order Under Rule 56, Federal Rules of Civil Procedure that the Accused Products Do Not Infringe Claims 14-17 of the Patent-In-Suit at 2, Oct. 13, 2006, ECF No. 101.)  Eventually, Intex settled on "a structure that fits and holds onto an inserted part so that the structure and the part are detachably connected to each other.". Op. and Order at 14, Sept. 24, 2013, ECF No. 208.

[2] Mr. Wang's Chinese name is Wang Cheng Chung.

provides an opening into the interior of the air bed 26 (shown in blue).  The end of the pump labeled as item 206 is inserted into the socket, such that most of the body of the pump is located in the socket.  When the pump is switched on, it blows air from an air inlet (labeled as item 204) to the air outlet (item 206), and into the interior of the air bed to inflate it.  To deflate the bed, the pump is simply removed from the socket to allow the air to escape out the hole in the socket (green).



The electric pump may be wholly or partially in the socket.  (*Id.* at 3:43-45; Figs. 6B, 6C.)  By wholly or partially locating the body of the electric pump in the socket in this manner, the electric pump can stably pump the air bed without being held manually by the user.  (*See id.*) Wholly or partially locating the pump body in the socket also reduces or eliminates the external exposure of the pump, providing a more compact and integrated design where, *e.g.*, bed sheets do not "bulge" out as much at the location of the pump.  This can be readily seen in Figure 6C of the '469 patent, which shows the second of ten embodiments of the patent.  Item 30 is the electric pump located in the socket which is built into the inflatable body.  (*Id.* at Fig. 6C; 3:44-46):



FIG. 6C

Another embodiment shown in Figure 8A from the '469 patent reproduced (and colored) below depicts the pump and socket configuration similar to that employed in the accused Intex products.  In this embodiment, pump 42 (red) is inserted into the socket 46 (yellow).  The socket fits the pump and holds it laterally and also axially in the downward direction.  An additional component, cap 44 (white), also restricts movement of the pump in the upward axial direction. As will be described further below, cap 44 acts like the screws in Intex's Pump A and Pump B products to detachably hold the pump in place.



FIG. 8A

### C.  The Accused Intex Products

The accused products can be grouped in two categories:  "Pump A" and "Pump B" products.  Intex air bed products including those containing or incorporating pumps with pump model numbers 619RW and 619RL are substantially the same for purposes of infringement, and will be referred to as "Pump A products."  (Statement of Material Facts (hereinafter, "SMF"), ¶ 1.)  Intex air bed products including those containing or incorporating pumps with pump model numbers AP619, 639 and 626R are substantially the same for the purposes of infringement, and will be referred to as "Pump B products."  (*Id.*)

### 1)  Intex's Pump A Products

As shown in the figure below,[3] Pump A products include a socket structure (green) built into an inflatable body (the cutaway region shown in white around the perimeter of the structure)

_____

[3] This and the other illustrations of Intex's products herein were created by TWW's expert, Dr. Dubowsky.  Intex does not dispute that these figures are accurate representations of its

and an electric pump (blue) used to inflate the air bed.  (SMF ¶ 3.)  The following exploded view
shows the pump removed from the socket:



The following figure depicts a cutaway of the pump and socket in its assembled
configuration, and also shows the interior of the pump in detail.  (SMF ¶ 4.)  Specifically, the
electric pump includes a pump body, wholly located in the socket, which consists of the motor
(light gray), the impeller unit (blue and orange), and the faceplate (purple).  (*Id.*)  The electric
pump also includes air outlets.  (*Id.*)  During inflation, the air outlets are exit ports in the impeller
unit (indicated by blue lines emerging radially from the impeller unit).  (SMF ¶ 5.)  These air
outlets are defined by the material encircling the outlets, and the remainder of these components
defines the pump body.  (*Id.*)

products.  (SMF ¶ 2.)  For the Court's convenience, a full-size set of these figures is attached as
Exhibit 4 to the Kopsidas Declaration.



The Pump A products are inflated either by pressing a switch on the faceplate (purple), or by pressing a switch on the tethered or remote hand controls (not shown).  (SMF ¶ 6.)  When the pump is powered, air is drawn from outside the air bed into the pump, which exhausts higher pressure air that opens and travels through a one-way control valve (yellow) into the inflatable body.  (*Id*.)  When the air bed is inflated and the motor (light gray) is turned off, the control valve (yellow) closes, ensuring that the inflatable body remains inflated.  (*Id*.)  The Pump A products do not have a power deflate feature.  (*Id*.)

The impeller unit (blue and orange) of the electric pump is connected to the socket (green) with four screws.  (SMF ¶ 7.)  The faceplate (purple) of the electric pump is connected to the socket (green) with six screws.  (*Id*.)  The faceplate (purple) and socket (green) are geometrically matched to prevent air leakage between them.  (*Id*.)  There are male bayonet-type connectors provided on the electric pump to receive electrical power from an AC power cord.  (SMF ¶ 8.)

2)  Intex's Pump B Products

Similarly, Pump B products include an inflatable body with a socket structure built into the inflatable body and an electric pump used to inflate and deflate the air bed.  (SMF ¶ 9.)  The following exploded view shows the pump (blue) removed from the socket (green) (SMF ¶ 10):



As shown in the cutaway figure below, the electric pump includes a pump body, wholly located in the socket, which consists of the motor (light gray), the impeller unit (blue and orange), the directional airflow element (yellow), and the faceplate (purple).  (SMF ¶ 11.)  The electric pump also includes air outlets.  (*Id.*)



The Pump B products are turned on by a switch on the faceplate (purple).  (SMF ¶ 12.) During inflation, the air outlet is a hole in the impeller unit (blue and orange), as indicated by the

orange line in the figure above.  (*Id.*)  When the pump is powered, as shown above, air is drawn in through the tube-like directional airflow element (yellow) into the pump, which exhausts higher pressure air that opens and travels through a one-way control valve into the inflatable body.  (*Id.*)  When the air bed is inflated and the motor is turned off, the control valve closes, ensuring that the inflatable body remains inflated.  (*Id.*)

During deflation, the air outlet is the hole in the knob (red).  These air outlets are defined by the ring of material encircling the outlets, and the remainder of these components defines the pump body.  (SMF ¶ 13.)  To deflate the mattress, the direction of the airflow is reversed from the inflatable body to exhaust to the outside of the product.  (*Id.*)  The reversal is accomplished by changing the direction of the directional airflow element (yellow) of the pump body by turning a knob (red) mounted on the faceplate (purple).  (*Id.*)  Simultaneously, the cam on the directional airflow element (yellow) holds the check valve open. (*Id.*)  The flow of air during deflation is indicated by the orange line (*id.*):



The impeller unit (blue and orange) of the electric pump is connected to the socket (green) with four screws while the faceplate (purple) of the electric pump is connected to the socket (green) with six screws.  (SMF ¶ 14.)  The faceplate (purple) and socket (green) are

geometrically matched to prevent air leakage between them.  (*Id.*)  The Pump B products are

compatible with both AC and DC power packs.  (SMF ¶ 15.)  There are male bayonet-type

connectors provided on the electric pump to receive AC or DC electrical power.  (*Id.*)

## III.   INTEX'S PRODUCTS LITERALLY INFRINGE CLAIMS 14-17 OF THE '469 PATENT

The parties are in complete agreement regarding the structure and operation of the

accused products and in near-complete agreement that Intex's products literally meet every

limitation of the asserted claims.[4]  The sole point of disagreement between the parties centers

around the term "socket," as that term has been construed by the Court.

### A.  Legal Authority

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (2013);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 251-52 (1986).  A disputed fact is "material" if it "might affect the outcome of a suit under

governing law."  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006).  A dispute over a

material fact is "genuine" if it could lead a reasonable jury to return a verdict in favor of the

nonmoving party.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Holcomb v. Powell*, 433 F.3d at

895.  "Summary judgment is as appropriate in a patent case as it is in any other case."  *C.R. Bard,*

*Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 673 (Fed. Cir. 1990).

Patent infringement occurs when one "without authority makes, uses, offers to sell, or

sells any patented invention ..."  35 U.S.C. § 271(a).  Determining infringement involves a two-

step analysis:  construing the asserted claims (which the Court has now done), and then

_____

[4] Although TWW also contends that claims 14-17 are infringed under the doctrine of
equivalents, it only seeks summary judgment of literal infringement at this time.

determining whether the accused devices meet the claim limitations as properly construed.  *NTP, Inc. v. Research In Motion, Ltd.*, 392 F.3d 1336, 1364 (Fed. Cir. 2004).  To establish literal infringement, each and every limitation must be performed exactly as claimed.  *Litton Sys. Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1454 (Fed. Cir. 1998).

### B.  Claim Constructions

The Court has construed the following terms:

| Claim Term | Construction |
|---|---|
| Socket (claims 14-17) | a structure that fits and holds onto an inserted part, so that the structure and the part are detachably connected to each other.<br><br>Op. and Order at 13-14, Sept. 24, 3013, ECF No. 208. |
| Electric pump (claims 14, 16) | an electronically powered machine or device for raising, compressing, or transferring fluids, including gases.<br><br>Mem. Op. and Order at 10, Mar. 28, 2008, ECF No. 145. |
| Connector (claim 14) | something that permits passage of electrical current.<br><br>Mem. Op. and Order at 12, Mar. 28, 2008, ECF No. 145. |
| Inflatable body (claims 14-17) | a substantially airtight structure that expands when filled with air or other gases.<br><br>Mem. Op. and Order at 14-15, Mar. 28, 2008, ECF No. 145. |
| Pump body (claims 14-17) | the main part of the pump, to be distinguished from the air outlet, and is not confined to the housing surrounding other parts of the pump.<br><br>Op. and Order at 28, Sept. 24, 3013, ECF No. 208. |
| Air outlet (claims 14, 16) | a passage that permits air to travel out of the pump.<br><br>Mem. Op. and Order at 10-11, Mar. 28, 2008, ECF No. 145. |
| Connected to (claims 14, 16) | coupled or joined.<br><br>Mem. Op. and Order at 11-12, Mar. 28, 2008, ECF No. 145. |
| Received (claims 15, 17) | positioned or oriented.<br><br>Mem. Op. and Order at 14, Mar. 28, 2008, ECF No. 145. |
| Matched (claim 16) | geometrically matched.<br><br>Mem. Op. and Order at 13, Mar. 28, 2008, ECF No. 145. |

### C. Intex's Pump A and Pump B Products Literally Infringe Claims 14 and 16

There is no dispute that the accused Intex products meet all of the limitations of the asserted claims with the exception of the "socket" limitation.  Intex's expert, Mr. Berninger, conceded as much at his deposition:

> Q  So with regard to the words of Claims 14 through 17, the only thing that you think is missing is the socket, right?
>
> A  Yes.

(Deposition Transcript of John F. Berninger at 94:3-6; Kopsidas Decl., Ex. 5).)  Thus, that is the only limitation in dispute.  Nevertheless, for completeness, TWW will address every limitation in the asserted claims.

### 1) Claim 14

Generally, claim 14 describes an inflatable body with a socket built into the body to receive an electric pump:

> 14. An inflatable product including:
>
> [14a]   an inflatable body;
>
> [14b]   a socket built in the inflatable body;
>
> [14c]   an electric pump, including a pump body and an air outlet, connected to the socket to pump the inflatable body, wherein the pump body is wholly or partially located in the socket;
>
> [14d]   a connector provided on the electric pump for connecting an external power to actuate the electric pump.

('469 Patent at 8:29-39; Kopsidas Decl., Ex. 1.)

#### a. Limitation [14a] an inflatable body

The accused Intex Pump A and Pump B products are air mattresses which include, obviously, an inflatable body, defined as a substantially airtight structure that expands when filled with air or other gases.  (SMF ¶ 16.)  Intex's expert, Mr. Berninger offered no rebuttal on this point.  (*See generally* Rebuttal Expert Rpt. of John F. Berninger; *see also, e.g., id.* at ¶ 25 (referring to accused Intex products as inflatable products); Kopsidas Decl., Ex. 6).)

### b.   Limitation [14b] a socket built in the inflatable body;

The accused Pump A and Pump B products include a "socket," as defined by the Court, in that they include a structure (shown below in green) that fits and holds onto an inserted part (blue), so that the green structure and the blue part are detachably connected to each other. (SMF ¶ 17.)

The green structure is geometrically matched to fit the blue inserted part.  (SMF ¶ 18.) This close fit between them not only reduces or prevents air leakage between them, but also results in the green structure holding onto the blue inserted part, so that the two are detachably connected to each other.  (*Id.*)  For instance, this structural interrelationship is such that the socket holds the blue inserted part laterally, restricting side-to-side movement.  (*Id.*)  It also holds the blue inserted part axially.  (*Id.*)  Additional axial holding in the direction away from the green structure is provided by several screws that are detachably connected to the green structure, which can be removed using a conventional screwdriver.  (SMF ¶ 19.)  Some of these screw holes in the blue inserted part and their mating holes in the green structure are indicated below with red arrows.



Pump A Configuration, Exploded View



Pump B Configuration, Exploded View

The following figures (taken from Figures 8 and 3 in Exhibit 4 to the Kopsidas Declaration) show more closely example regions where the socket structures in the Pump A and Pump B products fit and hold onto the inserted parts, restricting lateral and axial movement of the inserted parts so that they are detachably connected to each other.  (SMF ¶ 20.)



Thus, the accused products meet this claim limitation because they include a structure that fits and holds onto an inserted part so that the structure and the part are detachably connected to each other.

### c.   Limitation [14c] an electric pump, including a pump body and an air outlet, connected to the socket to pump the inflatable body, wherein the pump body is wholly or partially located in the socket;

The accused Intex Pump A and Pump B products include an electric pump, defined as an electronically powered machine or device for raising, compressing, or transferring fluids, including gases.  (SMF ¶ 21.)  The electric pump acts to power inflate both Pump A and Pump B products, and to power deflate Pump B products.  (SMF ¶ 22.)

The accused products further include a pump body, defined as "the main part of the pump, to be distinguished from the air outlet, and is not confined to the housing surrounding

other parts of the pump." Specifically, the pump body in the Pump A products consist of the motor (light gray), the impeller unit (blue and orange), and the faceplate (purple), shown below. (SMF ¶ 23.) The accused products further include an air outlet, defined as "a passage that permits air to travel out of the pump." (SMF ¶ 24.) During inflation, the air outlets are exit ports in the impeller unit (indicated by blue lines emerging radially from the impeller in the figure below). (*Id.*) These air outlets are defined by the material encircling the outlets and they permit air to travel out of the pump. (*Id.*)



Similarly, the pump body in the Pump B products consist of the motor (light gray), the impeller unit (blue and orange), the directional airflow element (yellow), and the faceplate (purple), as shown below. (SMF ¶ 25.) The accused Pump B products further include an air outlet, defined as "a passage that permits air to travel out of the pump." (SMF ¶ 26.) During inflation, the air outlet is a hole in the impeller unit (indicated by red line in the figure below). (*Id.*) During deflation, the air outlet is the hole in the knob (red). (*Id.*) These air outlets are defined by the ring of material encircling the outlets and they permit air to travel out of the pump. (*Id.*)



The impeller unit of the electric pump in both Pump A and Pump B products is connected to (or "coupled or joined") to the socket and operates to pump the inflatable body.  (SMF ¶ 27.)  Lastly, as shown in all of the above figures, the pump body in both the Pump A and Pump B products is wholly or partially located in the socket (green).  (SMF ¶ 28.)  Intex's expert, Mr. Berninger offered no rebuttal on this limitation.  (*See generally* Rebuttal Expert Rpt. of John F. Berninger; Kopsidas Decl., Ex. 6).)

### d.  Limitation [14d] a connector provided on the electric pump for connecting an external power to actuate the electric pump.

The accused Intex Pump A and Pump B products include a connector (defined as something that permits passage of electrical current) on the electric pump for connecting an external power to actuate the electric pump.  Specifically, the accused products all include either an AC power cord or a battery pack with metal connectors to permit passage of electrical current to the pump motor.   SMF ¶¶ 8, 15.  The connector can be seen in photographs of the accused products produced by Intex:



(Ex. 2 to Plaintiff Intex Recreation Corp.'s Cross-Motion For Summary Judgment of

Noninfringement and Opposition to Defendant Team Worldwide's Motion For Partial Summary

Judgment, ECF No. 155-8.)  Intex's expert, Mr. Berninger offered no rebuttal on this limitation.

(*See generally* Rebuttal Expert Rpt. of John F. Berninger; Kopsidas Decl., Ex. 6.)

Accordingly, the Intex Pump A and Pump B products practice all of the limitations of,

and thus infringe, claim 14 of the '469 patent.

2) <u>Claim 16</u>

Claim 16 is identical to claim 14 except for the addition of the underlined portion in

limitation 16c below and the lack of a limitation corresponding to 14d:

> 16. An inflatable product including:
>
> an inflatable body;
>
> a socket built in the inflatable body;
>
> [16c] an electric pump, including a pump body and an air outlet, connected to the socket to pump the inflatable body, wherein the pump body is wholly or partially located in tile [*sic*, the] socket, <u>a portion of the electric pump is inserted into tile [*sic*, the] socket, and the portion of the electric pump and the socket are matched with each other to prevent an air leakage therebetween</u>.

('469 Patent at 8:45-55; Kopsidas Decl., Ex. 1.)  Thus, the infringement analysis for claim 16 is identical to that for claim 14 for most of the limitations.

In both the Pump A and Pump B products, a portion of the electric pump is inserted into the socket, as shown in the following figures:



Pump A Configuration



Pump B Configuration

(SMF ¶ 29.)  Specifically, as can be seen in these figures, the components comprising the electric

pump are entirely within the (green) socket structure.  (*Id.*)  Moreover, as can be observed from

the contours of the faceplates (purple) fitting tightly with the socket structure (green), the electric

pumps in both types of products geometrically match the structure into which they are inserted

such that air leakage is prevented.  (SMF ¶ 30.)  That the pump is inserted into the socket and

matched to prevent air leakage is also apparent in the following photograph produced by Intex

showing the pump inserted into the socket with a portion of the socket structure cut away:



(Ex. 3 to Plaintiff Intex Recreation Corp.'s Cross-Motion For Summary Judgment of

Noninfringement and Opposition to Defendant Team Worldwide's Motion For Partial Summary

Judgment, ECF No. 155-9.)  Accordingly, the Intex Pump A and Pump B products practice all of

the limitations of, and thus infringe, claim 16.

### D.  Intex's Pump B Products Also Literally Infringe Claims 15 and 17

Claims 15 and 17 are identical and they depend from claims 14 and 16, respectively.

Essentially, they add the limitation that the pump operates in a first direction for inflation and a

second direction for deflation:

> 15. The inflatable product as claimed in claim 14, wherein the pump body can be received partially or wholly in the socket in a first direction for inflating the inflatable body, and received in a second direction for deflating the inflatable body.

('469 Patent at 8:40-44; *see also id.* at 8:56-60 (claim 17); Kopsidas Decl., Ex. 1.)

The Pump B products include a directional airflow element within the pump body that can be positioned in a first direction to inflate the mattress and in a second direction to deflate the mattress. (SMF ¶ 31.)

During inflation, when the pump is powered, as shown in the following figure, air is drawn in (shown by the blue arrow) through the tube-like directional airflow element (yellow) into the pump, which exhausts higher pressure air that opens and travels through a one-way control valve into the inflatable body (shown by the orange arrow). (SMF ¶ 32.)



During deflation, as shown in the following diagram, the direction of the airflow is reversed from the inflatable body to exhaust to the outside of the product:



(SMF ¶ 33.)  The reversal is accomplished by changing the direction of the directional airflow element (yellow) of the pump body by turning a knob (red) mounted on the faceplate.  (*Id.*)  Thus, the directional airflow element operates in a first direction for inflating the inflatable body and a second direction for deflating the inflatable body.  Accordingly, the Intex Pump B products practice, and thus infringe, claims 15 and 17.

## IV.    CONCLUSION

For the foregoing reasons, TWW respectfully requests that the Court grant TWW's motion for summary judgment that the accused Intex Pump A and Pump B products literally infringe claims 14 and 16 of the '469 patent, and that the accused Intex Pump B products also literally infringe claims 15 and 17.

Dated:  December 12, 2013                    FISH & RICHARDSON P.C.


                                             By:

                                                 /s/ Andrew R. Kopsidas
                                                 Andrew R. Kopsidas (#476237)

                                                 FISH & RICHARDSON P.C.
                                                 1425 K Street, N.W., 11th Fl.
                                                 Washington, D.C. 20005
                                                 Telephone: 202-783-5070
                                                 Facsimile: 202-783-2331


                                                 Kurt L. Glitzenstein (*pro hac vice*)

                                                 FISH & RICHARDSON P.C.
                                                 One Marina Park Drive
                                                 Boston, MA 02210
                                                 Telephone: 617-542-5070
                                                 Facsimile: 617-542-8906


                                             Attorneys for Defendant
                                             TEAM WORLDWIDE CORPORATION