UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTEX RECREATION CORP.,<br><br>*Plaintiff/Counterclaim-Defendant*,<br><br>v.<br><br>TEAM WORLDWIDE CORPORATION,<br><br>*Defendant/Counterclaim-Plaintiff*. | CASE NO.  1:04 CV 01785 (PLF/DAR)<br>Judge Paul L. Friedman<br>Mag. Judge Deborah A. Robinson<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF INTEX RECREATION CORP.'S
MOTION FOR FEES, COSTS, AND EXPENSES**

Pursuant to 35 U.S.C. § 285 and for the reasons set forth in the accompanying Memorandum in Support of its Motion for its Fees, Costs, and Expenses, Intex Recreation Corp. ("Intex") moves for and respectfully requests that the Court find that this case was "exceptional" under 35 U.S.C. § 285 since November 1, 2013, and thereafter allow supplemental briefing on the reasonableness of Intex's request for fees, costs, and expenses.  Pursuant to LCvR 7(m), the undersigned counsel discussed the present motion with counsel for Team Worldwide Corporation ("TWW"), Andrew Kopsidas, on April 14, 2014, and Mr. Kopsidas confirmed that TWW opposes the present motion.

Dated: April 16, 2014

Respectfully submitted,

/s/ Andrew M. McCoy
R. Trevor Carter (*pro hac vice*)
Andrew M. McCoy (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian St., Suite 2700
Indianapolis, IN  46204
Ph:     (317) 237-0300
Fax:    (317) 237-1000

 /s/ Edward J. Naidich
Gerald F. Ivey (#367009)
Edward J. Naidich (#481649)
Troy E. Grabow (#475013)
Finnegan, Henderson, Farbow,
Garrett & Dunner, LLP
901 New York Ave., NW
Washington, DC  20001-4413
Ph:     (202) 408-4000
Fax:    (202) 408-4400

*Counsel for Plaintiff, Intex Recreation Corp.*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| INTEX RECREATION CORP., <br><br> *Plaintiff/Counterclaim-Defendant*, <br><br> v. <br><br> TEAM WORLDWIDE CORPORATION, <br><br> *Defendant/Counterclaim-Plaintiff*. | CASE NO.  1:04 CV 01785 (PLF/DAR) <br> Judge Paul L. Friedman <br> Mag. Judge Deborah A. Robinson <br><br> **ORAL ARGUMENT REQUESTED** |

**INTEX RECREATION CORP.'S BRIEF IN SUPPORT OF ITS MOTION FOR FEES, COSTS, AND EXPENSES UNDER 35 U.S.C. § 285**

# TABLE OF AUTHORITIES

**Cases**

*Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) (*en banc*) ........................... 5, 10

*Eltech Sys. Corp. v. PPG Indus. Inc.*, 903 F.2d 805 (Fed. Cir. 1990) ........................................ 8, 9

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ............................................................................... 8

*Highmark Inc. v. Allcare Health Management Systems, Inc.*,
   134 S. Ct. 48 (2013) .................................................................................................................. 6

*Highmark, Inc. v. Allcare Health Mgm't Sys., Inc.*,
   687 F.3d 1300 (Fed. Cir. 2012) ................................................................................ 6, 7, 8, 9, 10

*In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) ............................................................ 8

*Intex Recreation Corp. v. Team Worldwide Corp*,
   --- F. Supp. 2d ---, 2013 WL 5328372 (D.D.C. 2013) ..................................................... 2, 3, 4

*Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302 (Fed. Cir. 2013) ........................... 6, 8, 9, 10

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012) ........................................ 10

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 49 (2013) ................................... 6

*Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306 (Fed. Cir. 2013) ................................. 7

**Statutes**

35 U.S.C. § 285 ............................................................................................................................... 5

Pursuant to Federal Rule of Civil Procedure 54(d) and LCvR 54.2, Intex Recreation Corp. ("Intex") moves to recover the attorneys' fees, costs, and expenses Intex incurred in this case since November 1, 2013. Simply put, Team Worldwide Corporation ("TWW") should have stipulated to non-infringement after the Court issued its claim construction ruling and adopted Intex's construction of the term "socket." Instead, TWW pressed baseless infringement theories against Intex and even sought summary judgment of infringement relying on those baseless theories. In its order granting Intex's motion for summary judgment, the Court characterized TWW's infringement theories and arguments various ways, including that there were "fatal problems" with TWW's theories, that certain of TWW's arguments made "no sense" or were "meritless," and that others were "plainly incorrect" and "directly contradicted" by the '469 Patent specification. *See* Dkt. No. 225 at 15, 17, 25-26. Therefore, because the objective baselessness of TWW's arguments given the Court's construction of "socket" was either known or so obvious that it should have been known, TWW's failure to stipulate to non-infringement was in bad faith and warrants finding this case to be "exceptional" under 35 U.S.C. § 285 since at least November 1, 2013.

## I. BACKGROUND[1]

The issue of whether Intex's accused inflatable airbeds include "sockets" built into the inflatable beds and separate pumps connected to the "sockets" has been one of the primary issues throughout this litigation.[2] Non-infringement was clear if Intex's construction was adopted. Accordingly, when the Court adopted Intex's proposed construction of "socket" in its September

---

[1] The patent-in-suit, U.S. Patent No. 6,793,469 ("the '469 Patent"), and Intex's inflatable airbeds that TWW accused of infringing the '469 Patent, were discussed in detail in prior Court orders. *See, e.g.*, Dkt. Nos. 208, 225.

[2] Indeed, the parties have indicated in Court filings that the Court's construction of at least the term "socket" is case dispositive, particularly in view of the fact that the Parties did not dispute any relevant facts about Intex's accused products. *See, e.g.*, Dkt. No. 146-1 at 1.

1

24, 2013 Opinion and Order (the "*Markman* Opinion"),[3] TWW should have stipulated to non-infringement.  Intex made this very point in the Joint Status Report filed on November 1, 2013; TWW, however, pressed for supplemental expert reports, supplemental discovery, and summary judgment briefing.  *See generally* Dkt. No. 209.

On November 1, 2013, TWW also served a supplemental expert report that purported to apply the Court's construction of "socket," but, in reality, ignored the Court's construction. Despite TWW's failure to apply the Court's construction of "socket" in its expert's supplemental expert report, Intex was nevertheless forced to engage its expert, John Berninger, to prepare a responsive report, which Intex served on TWW on December 12, 2013. *See* Dkt. No. 212-2. Both Intex and TWW then moved for summary judgment,[4] the Court held a summary judgment hearing on February 25, 2014, and, on March 10, 2014, the Court issued its Order granting Intex's motion for summary judgment of non-infringement and denying TWW's motion.  *See* Dkt. Nos. 224 and 225.

In its March 10, 2014 opinion, the Court began its infringement analysis by noting that there were "two fatal problems" with TWW's literal infringement theory.  *See* Dkt. No. 225 at 15.  First, TWW argued that the housings of the pumps in Intex's accused products (which were referred to as the "Accused Pumps" during summary judgment) constituted the claimed "socket;" however, the Court rejected that argument, stating: "*it is clear* that a person of ordinary skill in the field of pneumatics would view the housing in the accused devices to be part of the electric pump, not a distinct structural element." *Id.* at 16 (emphasis added).  In reaching this conclusion,

---

[3] *See* Dkt. No. 208 at 27; *see also Intex Recreation Corp. v. Team Worldwide Corp*, --- F. Supp. 2d ---, 2013 WL 5328372 (D.D.C. 2013).

[4] Intex moved for summary judgment asking the Court to rule as a matter of law that Intex's accused products did not infringe the asserted claims of the '469 Patent, either literally or under the doctrine of equivalents (Dkt. Nos. 212, 217, and 220), and TWW moved for summary judgment of literal infringement (Dkt. Nos. 211, 216, and 219).

the Court noted that TWW itself conceded that the Accused Pumps include a housing.  *See id.*, citing Dkt. No. 156 (TWW's Obj. Opp.) at 32.  The Court also noted that Intex provided expert testimony consistent with the Court's finding that the housing is part of Intex's Accused Pumps, and that TWW's counterarguments were unsupported by expert testimony and made "no sense." *Id.* at 16-17.

Second, the Court held that even if TWW's theory that the housings in the Accused Pumps were not part of the pumps themselves were correct, the housings still could not be deemed the claimed "socket."  *Id.* at 18.  Specifically, the Court held that the Accused Pumps do not "fit and hold onto" anything because, as the Court clarified in its *Markman* Opinion, "fit and hold onto" means "'to grip,' akin to a light bulb socket that fits and holds onto a light bulb, or electric socket that fits and holds a plug, or, as discussed at oral argument, a lid that fit[s] and holds onto a mason jar." *Id.* (citing 2013 WL 5328372 at *7).  Furthermore, the Court held that the pump components in the Accused Pumps are not "'detachably connected' to the housing," because "the user cannot remove the pump components from the inflatable body without effectively disassembling the pump." *Id.* at 19.  Accordingly, the Court disagreed with TWW that the difference between showing two structures that are "detachably connected" to each other, as required by the Court's construction of "socket," and a product that has to be completely disassembled to even attempt to prove infringement, was merely a difference in semantics (as TWW had argued).  *Id.* (noting that "[r]emoving eight to eleven screws with a screwdriver is *quite different in form* from turning the lid of a mason jar or unscrewing a light bulb" (emphasis added)).  Finally, the Court also rejected TWW's argument that the difference between a "socket" and "housing" is again one of semantics, concluding that "the Court rejected

3

TWW's virtually identical argument that a socket was equivalent to a chamber in its *Markman* Opinion." *See id.* (citing 2013 WL 5328372 at *9-12).

Next, the Court found that Dr. Dubowsky failed to offer any evidence that created a genuine issue of material fact that would preclude a finding of non-infringement under the doctrine of equivalents. *Id.* at 22-26.  In fact, the Court identified a myriad of problems with Dr. Dubowksy's opinion, including:

- Dr. Dubowksy generally failed to "link his analysis to the patent claims or specification [of the '469 Patent]." *Id.* at 23.

- Dr. Dubowksy did "not explain his conclusion" about the socket's function, and he did "not connect this purported function to anything in the specification." *Id.*

- The Court noted that Dr. Dubowsky's own concessions about how the accused products operate show how they could not satisfy even his own definition of the "way" in which the "socket" element performs its function. *Id.* Specifically, Dr. Dubowsky "conced[ed] that the housing remains attached to the pump components *only* through the use of screws." *Id.* (emphasis added).  The Court then held, "[t]his is not a 'fit and hold' connection." *Id.* (citing Dr. Dubowsky's Expert Report at ¶ IV(d)).

- The Court noted that Dr. Dubowksy also conceded that "in order to remove the pump, a user cannot do so manually, but must take the pump apart with a screw driver." *Id.* (citing Dr. Dubowsky's Expert Report at ¶ IV(d)).  Accordingly, the Court held that "[t]his is not 'detachably connected.'" *Id.*

- The Court also held that because Dr. Dubowsky failed to apply the Court's claim construction, his opinions could "not create a factual dispute." *Id.* (citation omitted).

4

- Lastly, the Court determined that TWW's arguments regarding the third embodiment of the '469 Patent, which TWW attempted to analogize to the screws in the accused products, were "meritless." *Id.* at 25. Specifically, the Court held that TWW's arguments were "directly contradicted by the patent specification," and "plainly incorrect." *Id.* at 25-26.

## II.   ARGUMENT

The myriad of problems with TWW's legal theories and arguments are the direct result of TWW failing to accept the Court's construction of "socket." Instead of stipulating to non-infringement, TWW presented meritless arguments that ultimately wasted valuable Court resources and caused Intex to incur unnecessary attorneys' fees, costs, and expenses. Therefore, Intex respectfully requests that it be compensated the reasonable amount of fees and expenses that it incurred as a result of TWW's objectively baseless, bad faith infringement assertions in this case since November 1, 2013, which is the day the Parties submitted competing case schedules in a Joint Status Report (Dkt. No. 209) and also the day that TWW served Dr. Dubowsky's supplemental expert report despite having received an unfavorable claim construction ruling on September 24, 2013.

### A.   Section 285 Jurisprudence and Pending Supreme Court Decisions

In exceptional cases, the court may award reasonable attorneys' fees and expenses to the prevailing party. *See* 35 U.S.C. § 285. Under the current state of the law, Intex, as the prevailing party, bears the burden of proving by clear and convincing evidence that at least a portion of this case is exceptional. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (*en banc*). Additionally, because Intex does not contend, for purposes of the present motion, that TWW engaged in litigation misconduct or fraud in securing the patent, Intex

5

must prove that (1) TWW either brought or maintained this litigation in bad faith, and (2) that TWW's infringement theories for at least a portion of the litigation were objectively baseless. *See Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302 (Fed. Cir. 2013) (citations omitted); *see also Highmark, Inc. v. Allcare Health Mgm't Sys., Inc.*, 687 F.3d 1300, 1311 (Fed. Cir. 2012) (noting that "the subjective prong may suggest that a case initially brought in good faith may be continued in bad faith depending on developments during discovery and otherwise.").

The current state of the law may soon change as the Supreme Court recently heard oral argument in two separate patent cases involving fee awards. *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 49 (2013) (granting *certiori* Oct. 1, 2013), appeal from 496 F. App'x 57 (Fed. Cir. 2012); *see also Highmark Inc. v. Allcare Health Management Systems, Inc.*, 134 S. Ct. 48 (2013) (granting *certiori* Oct. 1, 2013), appeal from 687 F.3d 1300 (Fed. Cir. 2012). The issues presented in these two cases involve determining the proper legal test required for awarding fees and also the proper standard of review appellate courts should use when reviewing fee awards (*i.e.*, whether appellate review should be *de novo* or whether a deferential, clear error standard of review should be applied). Accordingly, the current Federal Circuit standards set forth above may change before this Court has a chance to rule on the present motion. Nevertheless, under the current two-part test, Intex submits that the evidence included herein clearly and convincingly shows that since at least November 1, 2013, this case has been "exceptional" under 35 U.S.C. § 285.[5]

---

[5] Intex files the present motion within fourteen days of the final judgment entered by the Court (Dkt. No. 229), as required by Fed. R. Civ. P. 54(d)(2), and applies the current legal tests set forth by the Federal Circuit. However, in the event the Supreme Court revises the applicable legal tests, Intex requests that the Parties be permitted supplemental briefing to address the Supreme Court's ruling.

B.      **TWW's Infringement Theories Were Objectively Baseless**

"To be objectively baseless, the patentee's assertions—whether manifested in its infringement allegations or its claim construction positions—must be such that no reasonable litigant could reasonably expect success on the merits." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed. Cir. 2013) (internal quotations and citations omitted); *see also Highmark*, 687 F.3d at 1309.  "While an adverse claim construction generally cannot, alone, form the basis for an exceptional case finding . . . a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, *especially after an adverse claim construction*." *See Taurus IP*, 726 F.3d at 1328 (emphasis added) (citations omitted).

Since November 1, 2013, TWW asserted a literal infringement theory that this Court concluded had "two fatal problems" and in at least some respects made "no sense." *See* Dkt. No. 225 at 15-17.  TWW also relied on an expert report that failed to apply the Court's claim construction and included concessions that rendered the expert's opinions regarding the doctrine of equivalents simply irrelevant. *See id.* at 16-17.  Additionally, the Court found that various TWW arguments were "meritless," "plainly incorrect," and "directly contradicted" by the '469 Patent specification. *Id.* at 25-26.  Essentially, TWW improperly pursued infringement theories based on its definition of "socket," even though the Court had already rejected TWW's arguments when it adopted Intex's construction of "socket."  Therefore, and as the Court's criticisms of TWW's positions in its summary judgment order indicate, since at least November 1, 2013, TWW's tenuous infringement positions have been objectively baseless.

### C.     TWW has Maintained its Objectively Baseless Infringement Theories in Bad Faith

Whether a patentee maintains a case in bad faith is analyzed in view of the "totality of [the] circumstances." *See Highmark*, 687 F.3d at 1311.  "[S]ubjective bad faith only requires proof that the lack of objective foundation for the claim was *either* known *or* so obvious that it should have been known by the party asserting the claim." *Kilopass*, 738 F.3d at 1310 (emphasis in original) (internal quotations omitted) (citing *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (*en banc*).  Importantly, "actual knowledge of baselessness is *not required*." *Kilopass,* 738 F.3d at 1310 (emphasis added).  "Like a plaintiff seeking to recover attorneys' fees under § 285 based on alleged willful infringement, a defendant need only prove reckless conduct to satisfy the subjective component of the § 285 analysis." *Id*. (citations omitted); *see also Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (noting that "[p]revailing plaintiffs and prevailing defendants are to be treated alike" in the context of awarding attorneys' fees under 17 U.S.C. § 505); *Eltech Sys. Corp. v. PPG Indus. Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990) ("[T]here is and should be no difference in the standards applicable to patentees and infringers who engage in bad faith litigation.").

Bad faith can be inferred based purely on the objective baselessness of a plaintiff's claims or inferred from circumstantial evidence.  *See Kilopass*, 738 F.3d at 1311 ("The district court prematurely ended the § 285 inquiry without determining whether Kilopass's doctrine of equivalents theory was objectively baseless and whether that fact *or* other circumstantial evidence would support an inference of bad faith on the part of Kilopass." (emphasis added)); *id.* at 1314 ("Objective baselessness alone can create a sufficient inference of bad faith to establish exceptionality under § 285, unless the circumstances as a whole show a lack of recklessness on the patentee's part." (citing *Eltech*, 903 F.2d at 811)).  Indeed, "where 'the patentee is manifestly

8

unreasonable in assessing infringement, while continuing to assert infringement in court, an inference is proper of bad faith.'" *Id.* at 1311 (quoting *Eltech*, 903 F.2d at 811; *see also id.* (noting that "one's misguided belief, based on zealousness rather than reason, is simply not sufficient by itself to show that a case is not exceptional in light of objective evidence that a patentee has pressed meritless claims.").

Given the representations that TWW itself made to the Court regarding the impact claim construction has on the infringement issues in this case (*see* Dkt. No. 146-1 at 1)—particularly since there is no dispute about the structure of the accused products—TWW should have stipulated to non-infringement after the Court's *Markman* Opinion. Indeed, the Court's adoption of Intex's proposed construction for the term "socket" was *the reason* the Court granted Intex's motion for summary judgment of non-infringement—*i.e.,* because, as a matter of law, the accused products in this case do not include a "structure that fits and holds onto an inserted part so that the structure and the part are detachably connected to each other" (Dkt. No. 208 at 27) or any equivalent thereof. Instead of acknowledging this, TWW chose to rely on conclusory expert testimony and attorney argument to support its infringement positions, all of which were summarily rejected by the Court as being inconsistent with the Court's construction and contradictory to the clear language in the '469 Patent. TWW's failure to put forth any credible evidence or argument regarding non-infringement confirms that TWW knew of the objectively baseless nature of its arguments, or, at a minimum, that it was so obvious that TWW should have known.

This is particularly true when the various flaws in TWW's arguments are viewed collectively—*i.e.,* when the "totality of circumstances" is taken into consideration. *See Highmark*, 687 F.3d at 1311. Taken collectively, TWW's multiple tenuous arguments make it

9

proper to infer bad faith from TWW's decision not only to refuse to drop its infringement allegations against Intex, but also to move for summary judgment of infringement and unnecessarily increase the cost of litigation by requiring additional fact and expert discovery. Said another way, although there is no "smoking gun" hard evidence expressly stating that TWW maintained its case in bad faith, the totality of the circumstances show that TWW was "manifestly unreasonable in assessing infringement." *Kilopass*, 738 F.3d at 1311.  Accordingly, an inference of bad faith is proper.

### D.     Timing of the Reasonableness Decision

If the Court determines that at least a portion of this case is exceptional, then the Court must decide whether a reasonable award is justified.  *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012) (citing *Cybor Corp.*, 138 F.3d at 1460); *see also Highmark*, 687 F.3d at 1308 (noting that "if the case is deemed exceptional, a court must determine whether an award of attorneys' fees is appropriate and, if so, the amount of the award").  And pursuant to Fed. R. Civ. P. 54(d)(2)(C), "[t]he court may decide issues of liability for fees before receiving submissions on the value of services." Accordingly, this Court can simply first decide whether this case is "exceptional," and if it finds in favor of Intex, can thereafter turn to the question of whether Intex's request is reasonable.  Intex submits that such an approach is justified, particularly given the timing of the present motion relative to the *Octane Fitness* and *Highmark* cases pending before the Supreme Court.

### III.    CONCLUSION

For the reasons stated herein, Intex respectfully requests that the Court grant this motion. If this motion is granted, Intex requests that the Parties then submit additional briefing regarding the reasonableness and amount of Intex's request under 35 U.S.C. § 285.

10

Dated:  April 16, 2014	Respectfully submitted,

   /s/  Andrew M. McCoy
Gerald F. Ivey (#367009)
Edward J. Naidich (#481649)
Troy E. Grabow (#475013)
Finnegan, Henderson, Farbow,
 Garrett & Dunner, LLP
901 New York Ave., NW
Washington, DC  20001-4413
Ph:	(202) 408-4000
Fax:	(202) 408-4400
Email: gerald.ivey@finnegan.com
       ed.naidich@finnegan.com
       troy.grabow@finnegan.com

R. Trevor Carter (*pro hac vice*)
Andrew M. McCoy (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian St., Suite 2700
Indianapolis, IN  46204
Ph:	(317) 237-0300
Fax:	(317) 237-1000
Email: trevor.carter@faegrebd.com
       andrew.mccoy@faegred.com

*Counsel for Plaintiff, Intex Recreation Corp.*

11