UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

INTEX RECREATION CORP.,

       *Plaintiff/Counterclaim-Defendant*,

v.

TEAM WORLDWIDE CORPORATION,

       *Defendant/Counterclaim-Plaintiff*.

CASE NO.  1:04 CV 01785 (PLF/DAR)
Judge Paul L. Friedman
Mag. Judge Deborah A. Robinson

**ORAL ARGUMENT REQUESTED**

**INTEX RECREATION CORP.'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS
MOTION FOR FEES, COSTS, AND EXPENSES UNDER 35 U.S.C. § 285**

# **TABLE OF AUTHORITIES**

**Cases**

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005)..................... 6

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ............................................................................. 7

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744 (2014) ............................. 1, 7

*Intex Recreation Corp. v. Team Worldwide Corp*,
    --- F. Supp. 2d ---, 2013 WL 5328372 (D.D.C. 2013)....................................................... 2, 3, 4

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012) ......................................... 9

*Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) .................... 1, 6, 7, 9

*Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306 (Fed. Cir. 2013) ............................ 7, 8


**Statutes**

35 U.S.C. § 285........................................................................................................................ 1, 6


**Rules**

Fed. R. Civ. P. 54(d) ................................................................................................................ 1, 9

LCvR 54.2................................................................................................................................... 1

Pursuant to the Court's April 30, 2014 Minute Order, Intex Recreation Corp. ("Intex")

provides this supplemental brief in support of Intex's motion for the attorneys' fees, costs, and

expenses Intex incurred in this case since November 1, 2013.[1]  Pursuant to Federal Rule of Civil

Procedure 54(d), LCvR 54.2, 35 U.S.C. § 285, and the controlling case law—including the

recent United States Supreme Court decisions in *Octane Fitness, LLC v. Icon Health & Fitness,*

*Inc.*, 134 S. Ct. 1749 (2014) and *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct.

1744 (2014)—Intex respectfully requests that the Court grant the present motion.

Simply put, Team Worldwide Corporation ("TWW") should have stipulated to non-

infringement after the Court issued its claim construction ruling and adopted Intex's construction

of the term "socket." Instead, TWW pressed baseless infringement theories against Intex and

even sought summary judgment of infringement relying on those baseless theories.  In its order

granting Intex's motion for summary judgment of non-infringement, the Court characterized

TWW's infringement theories and arguments various ways, including that: (1) there were "fatal

problems" with TWW's theories; (2) certain of TWW's arguments made "no sense" or were

"meritless;" and (3) that others were "plainly incorrect" and "directly contradicted" by the '469

Patent specification. *See* Dkt. No. 225 at 15, 17, 25-26.  Therefore, because TWW's

infringement arguments were "exceptionally meritless," particularly given the Court's claim

construction of the term "socket" and the undisputed structure of the accused products, this case

should be deemed "exceptional" under 35 U.S.C. § 285 since at least November 1, 2013.  *See*

*Octane Fitness*, 134 S. Ct. at 1757 (2014).

---

[1] This brief supplements Intex's original filings regarding its motion for attorneys' fees (Dkt Nos. 230, 230-1).  Accordingly, the Court can focus its attention on the present brief and does not also need to consider Intex's opening brief.

US.54180559.01

## I.   BACKGROUND[2]

The issue of whether Intex's accused inflatable airbeds include "sockets" built into the inflatable beds and separate pumps connected to the "sockets" has been one of the primary issues throughout this litigation.[3]  Non-infringement was clear if Intex's construction was adopted. Accordingly, when the Court adopted Intex's proposed construction of "socket" in its September 24, 2013 Opinion and Order (the "*Markman* Opinion"),[4] TWW should have stipulated to non-infringement.  Intex made this very point in the Joint Status Report filed on November 1, 2013; TWW, however, pressed for supplemental expert reports, supplemental discovery, and summary judgment briefing.  *See generally* Dkt. No. 209.

On November 1, 2013, TWW also served a supplemental expert report that purported to apply the Court's construction of "socket," but, in reality, ignored the Court's construction. Despite TWW's failure to apply the Court's construction of "socket" in its expert's supplemental expert report, Intex was nevertheless forced to engage its expert, John Berninger, to prepare a responsive report, which Intex served on TWW on December 12, 2013. *See* Dkt. No. 212-2. Both Intex and TWW then moved for summary judgment,[5] the Court held a summary judgment hearing on February 25, 2014, and, on March 10, 2014, the Court issued its Order granting

---

[2] The patent-in-suit, U.S. Patent No. 6,793,469 ("the '469 Patent"), and Intex's inflatable airbeds that TWW accused of infringing the '469 Patent, were discussed in detail in prior Court orders.  *See, e.g.*, Dkt. Nos. 208, 225.

[3] Indeed, the parties indicated in Court filings that the Court's construction of at least the term "socket" is case dispositive, particularly in view of the fact that the Parties did not dispute any relevant facts about Intex's accused products.  *See, e.g.*, Dkt. No. 146-1 at 1.

[4] *See* Dkt. No. 208 at 27; *see also Intex Recreation Corp. v. Team Worldwide Corp*, --- F. Supp. 2d ---, 2013 WL 5328372 (D.D.C. 2013).

[5] Intex moved for summary judgment asking the Court to rule as a matter of law that Intex's accused products did not infringe the asserted claims of the '469 Patent, either literally or under the doctrine of equivalents (Dkt. Nos. 212, 217, and 220), and TWW moved for summary judgment of literal infringement (Dkt. Nos. 211, 216, and 219).

2

Intex's motion for summary judgment of non-infringement and denying TWW's motion.  *See*

Dkt. Nos. 224 and 225.

      In its March 10, 2014 opinion, the Court began its infringement analysis by noting that

there were "two fatal problems" with TWW's literal infringement theory.  *See* Dkt. No. 225 at

15.  First, TWW argued that the housings of the pumps in Intex's accused products (which were

referred to as the "Accused Pumps" during summary judgment) constituted the claimed "socket;"

however, the Court rejected that argument, stating: "*it is clear* that a person of ordinary skill in

the field of pneumatics would view the housing in the accused devices to be part of the electric

pump, not a distinct structural element."  *Id.* at 16 (emphasis added).  In reaching this conclusion,

the Court noted that TWW itself conceded that the Accused Pumps include a housing.  *See id.*,

citing Dkt. No. 156 (TWW's Obj. Opp.) at 32.  The Court also noted that Intex provided expert

testimony consistent with the Court's finding that the housing is part of Intex's Accused Pumps,

and that TWW's counterarguments were unsupported by expert testimony and made "no sense."

*Id.* at 16-17.

      Second, the Court held that even if TWW's theory that the housings in the Accused

Pumps were not part of the pumps themselves were correct, the housings still could not be

deemed the claimed "socket."  *Id.* at 18.  Specifically, the Court held that the Accused Pumps do

not "fit and hold onto" anything because, as the Court clarified in its *Markman* Opinion, "fit and

hold onto" means "'to grip,' akin to a light bulb socket that fits and holds onto a light bulb, or

electric socket that fits and holds a plug, or, as discussed at oral argument, a lid that fit[s] and

holds onto a mason jar."  *Id.* (citing 2013 WL 5328372 at *7).  Furthermore, the Court held that

the pump components in the Accused Pumps are not "'detachably connected' to the housing,"

because "the user cannot remove the pump components from the inflatable body without

US.54180559.01

effectively disassembling the pump." *Id.* at 19.  Accordingly, the Court disagreed with TWW

that the difference between showing two structures that are "detachably connected" to each

other, as required by the Court's construction of "socket," and a product that has to be

completely disassembled to even attempt to prove infringement, was merely a difference in

semantics (as TWW had argued).  *Id.* (noting that "[r]emoving eight to eleven screws with a

screwdriver is *quite different in form* from turning the lid of a mason jar or unscrewing a light

bulb" (emphasis added)).  Finally, the Court also rejected TWW's argument that the difference

between a "socket" and "housing" is again one of semantics, concluding that "the Court rejected

TWW's virtually identical argument that a socket was equivalent to a chamber in its *Markman*

Opinion." *See id.* (citing 2013 WL 5328372 at *9-12).

Next, the Court found that Dr. Dubowsky failed to offer any evidence that created a

genuine issue of material fact that would preclude a finding of non-infringement under the

doctrine of equivalents.  *Id.* at 22-26.  In fact, the Court identified a myriad of problems with Dr.

Dubowsky's opinion, including:

- Dr. Dubowsky generally failed to "link his analysis to the patent claims or specification [of the '469 Patent]." *Id.* at 23.

- Dr. Dubowsky did "not explain his conclusion" about the socket's function, and he did "not connect this purported function to anything in the specification." *Id.*

- The Court noted that Dr. Dubowsky's own concessions about how the accused products operate show how they could not satisfy even his own definition of the "way" in which the "socket" element performs its function. *Id.* Specifically, Dr. Dubowsky "conced[ed] that the housing remains attached to the pump components *only* through the use of

4

screws." *Id.* (emphasis added).  The Court then held, "[t]his is not a 'fit and hold'

connection."  *Id.* (citing Dr. Dubowsky's Expert Report at ¶ IV(d)).

- The Court noted that Dr. Dubowsky also conceded that "in order to remove the pump, a

  user cannot do so manually, but must take the pump apart with a screw driver." *Id.*

  (citing Dr. Dubowsky's Expert Report at ¶ IV(d)).  Accordingly, the Court held that

  "[t]his is not 'detachably connected.'" *Id.*

- The Court also held that because Dr. Dubowsky failed to apply the Court's claim

  construction, his opinions could "not create a factual dispute." *Id.* (citation omitted).

- Lastly, the Court determined that TWW's arguments regarding the third embodiment of

  the '469 Patent, which TWW attempted to analogize to the screws in the accused

  products, were "meritless." *Id.* at 25.  Specifically, the Court held that TWW's

  arguments were "directly contradicted by the patent specification," and "plainly

  incorrect." *Id.* at 25-26.

## II.    ARGUMENT

The myriad of problems with TWW's legal theories and arguments are the direct result of

TWW failing to accept the Court's construction of "socket." Instead of stipulating to non-

infringement, TWW presented multiple meritless arguments that ultimately wasted valuable

Court resources and caused Intex to incur unnecessary attorneys' fees, costs, and expenses.

Therefore, Intex respectfully requests that it be compensated the reasonable amount of fees and

expenses that it incurred as a result of TWW's baseless infringement arguments since November

1, 2013, which is the day the Parties submitted competing case schedules in a Joint Status Report

(Dkt. No. 209) and also the day that TWW served Dr. Dubowsky's supplemental expert report

despite having received an unfavorable claim construction ruling on September 24, 2013.

US.54180559.01

A.       **Recent Supreme Court Decisions Addressing 35 U.S.C. § 285**

In exceptional cases, the court may award reasonable attorneys' fees and expenses to the prevailing party.  *See*  35 U.S.C. § 285.  On April 29, 2014, the United States Supreme Court issued two opinions addressing three issues surrounding application of 35 U.S.C. §285. Specifically, the Supreme Court ruled that:

1. A prevailing party need only prove that a case is exceptional under Section 285 by a preponderance of the evidence, *not* by clear and convincing evidence.  *See Octane Fitness*, 134 S. Ct. at 1758 (reversing *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1382 (Fed. Cir. 2005)).

2. The proper legal test for interpreting whether a case is "exceptional" under Section 285 no longer requires proving that a party's arguments were objectively baseless *and* brought or maintained in bad faith.  Instead, "a case presenting either subjective bad faith *or* exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *See Octane Fitness*, 134 S. Ct. at 1757 (citation omitted) (emphasis added) (reversing *Brooks Furniture*, 393 F.3d at 1381).  The Court noted that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *See Octane Fitness*, 134 S. Ct. at 1756.  The Court also held that "there is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified," citing considerations such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance

6

US.54180559.01

considerations of compensation and deterrence." *Id.* at 1756, n. 6 (internal quotations omitted) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

3.  Finally, given that the decision to award fees under Section 285 is a discretionary one, the proper standard of review for a decision issued under Section 285 is abuse of discretion. *See Highmark,* 134 S. Ct. at 1748.

Thus, the standard for recovering fees, costs, and expenses under 35 U.S.C. § 285 for parties like Intex has been relaxed significantly. And while the same set of facts as set forth above and in Intex's original brief support a finding that TWW set forth meritless infringement arguments and did so in bad faith, given these new standards, Intex focuses the present motion only on proving that TWW's infringement arguments were exceptionally meritless, particularly given the governing law, the Court's claim construction, and the undisputed facts regarding the products TWW accused of infringement.

**B.      TWW's Infringement Theories Were Exceptionally Meritless**

As the Supreme Court made clear, "there is no precise rule or formula" for determining when a case stands out as "exceptional" under 35 U.S.C. § 285. *Octane Fitness*, 134 S. Ct. at 1756. Instead, factors such as "objective unreasonableness (both in the factual and legal components of the case)," among others, should be considered. *Id.* at n.6.  Accordingly, previous Federal Circuit cases analyzing the "objectively baseless" prong of the prior two-part test are helpful for determining whether TWW's litigation positions since November 1, 2013 warrant granting the present motion.  For instance, the Federal Circuit has held that "[t]o be objectively baseless, the patentee's assertions—whether manifested in its infringement allegations or its claim construction positions—must be such that no reasonable litigant could reasonably expect success on the merits." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1327 (Fed.

7

US.54180559.01

Cir. 2013) (internal quotations and citations omitted).  Additionally, "[w]hile an adverse claim construction generally cannot, alone, form the basis for an exceptional case finding . . . a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, *especially after an adverse claim construction*."  *See Taurus IP*, 726 F.3d at 1328 (emphasis added) (citations omitted).

Since November 1, 2013, TWW asserted a literal infringement theory that this Court concluded had "two fatal problems" and in at least some respects made "no sense."  *See* Dkt. No. 225 at 15-17.  TWW also relied on an expert report that failed to apply the Court's claim construction.  *See id.* at 16-17.  Additionally, the Court found that various TWW arguments were "meritless," "plainly incorrect," and "directly contradicted" by the '469 Patent specification.  *Id.* at 25-26.  Essentially, TWW improperly pursued infringement theories based on its definition of "socket," even though the Court had already rejected TWW's arguments when it adopted Intex's construction of "socket."

Moreover, given the representations that TWW itself made to the Court regarding the impact claim construction has on the infringement issues in this case (*see* Dkt. No. 146-1 at 1)—particularly since there is no dispute about the structure of the accused products(Dkt. No. 225 at 8)—TWW should have stipulated to non-infringement after the Court's *Markman* Opinion. Indeed, the Court's adoption of Intex's proposed construction for the term "socket" was *the reason* the Court granted Intex's motion for summary judgment of non-infringement—*i.e.,* because, as a matter of law, the accused products in this case do not include a "structure that fits and holds onto an inserted part so that the structure and the part are detachably connected to each other" (Dkt. No. 208 at 27) or any equivalent thereof.  Instead of acknowledging this, TWW chose to rely on conclusory expert testimony and attorney argument to support its infringement

positions, all of which were summarily rejected by the Court as being inconsistent with the Court's construction and contradictory to the clear language in the '469 Patent.  Furthermore, TWW pursued these meritless arguments while also unnecessarily increasing the cost of litigation through additional fact and expert discovery.

Accordingly, and as the Court's criticisms of TWW's positions in the Court's summary judgment order indicate, since at least November 1, 2013, TWW's infringement positions have been "exceptionally meritless." *See Octane Fitness*, 134 S. Ct. at 1757.  Said another way, a reasonable litigant in TWW's position would have understood that TWW's infringement arguments were exceptionally weak, particularly in view of the governing law, the Court's claim construction, and the relevant facts of this case—including, in particular, that there was no dispute as to the structure of the Accused Pumps (Dkt. No. 225 at 8).  *See Octane Fitness*, 134 S. Ct. at 1756 (noting that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.").  Moreover, it was unreasonable for TWW to pursue those meritless arguments as aggressively as TWW did (*i.e.*, by filing a motion for summary judgment of infringement); that unreasonable behavior further warrants finding that this case has been "exceptional" since at least November 1, 2013.

### C.      Timing of the Reasonableness Decision

If the Court determines that at least a portion of this case is exceptional, then the Court must decide whether a reasonable award is justified.  *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012) (citation omitted).  Pursuant to Fed. R. Civ. P. 54(d)(2)(C), "[t]he court may decide issues of liability for fees before receiving submissions on the value of

services." Accordingly, this Court can simply first decide whether this case is "exceptional," and if it finds in favor of Intex, can thereafter turn to the question of whether Intex's request is reasonable.  Intex submits that such an approach is justified and respectfully requests that the Court allow later submissions that provide an accounting of the value of the services and other applicable expenses Intex seeks to recover through the present motion.

### III.    CONCLUSION

For the reasons stated herein, Intex respectfully requests that the Court grant this motion. If this motion is granted, Intex requests that the Parties then submit additional briefing regarding the reasonableness and amount of Intex's request under 35 U.S.C. § 285.

Dated:  May 16, 2014                                         Respectfully submitted,

 /s/  Andrew M. McCoy
Gerald F. Ivey (#367009)
Edward J. Naidich (#481649)
Troy E. Grabow (#475013)
Finnegan, Henderson, Farabow,
 Garrett & Dunner, LLP
901 New York Ave., NW
Washington, DC  20001-4413
Ph:     (202) 408-4000
Fax:    (202) 408-4400
Email: gerald.ivey@finnegan.com
        ed.naidich@finnegan.com
        troy.grabow@finnegan.com

R. Trevor Carter (*pro hac vice*)
Andrew M. McCoy (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian St., Suite 2700
Indianapolis, IN  46204
Ph:     (317) 237-0300
Fax:    (317) 237-1000
Email: trevor.carter@faegrebd.com
        andrew.mccoy@faegred.com

*Counsel for Plaintiff, Intex Recreation Corp.*

10

US.54180559.01