UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| Intex Recreation Corp.,<br><br>    Plaintiff/Counterclaim-Defendant,<br><br>    v.<br><br>Team Worldwide Corporation,<br><br>    Defendant/Counterclaim-Plaintiff. | Civil Action No.:  1:04 CV 01785 PLF |

**DEFENDANT TEAM WORLDWIDE CORPORATION'S OPPOSITION TO
INTEX RECREATION CORPORATION'S MOTION FOR FEES, COSTS,
AND EXPENSES UNDER 35 U.S.C. § 285**

Defendant Team Worldwide Corporation ("TWW") respectfully submits that Plaintiff Intex Recreation Corporation ("Intex") is not entitled to attorney fees, costs, or expenses because this is not an "exceptional case" under 35 U.S.C. § 285, and TWW hereby opposes Intex's motion for the same.[1]

## I.  INTRODUCTION

After Magistrate Judge Robinson ruled against Intex on the constructions of the claim terms "socket" and "pump body" (among others) (Mem. Op. & Order of Mar. 28, 2008 at 8, ECF No. 145), Intex did not stipulate to infringement, but instead (1) served a report from its technical expert, Dr. Berninger, opining that the claims were nonetheless not infringed, even on those adverse constructions; and (2) filed a motion for summary judgment of non-infringement in the face of those adverse constructions. With the shoe now on the other foot, Intex faults TWW for proceeding in exactly the same manner. This is not hypocrisy, but a tacit admission that claim

---

[1] References to Intex's Motion (or "Mot.") herein are to Intex Recreation Corp.'s Supplemental Brief in Support of its Motion for Fees, Costs, and Expenses Under 35 U.S.C. § 285, ECF No. 234, which Intex has indicated supplants its previous motion. (Mot. at n.1.)

constructions may not eliminate all uncertainty regarding the scope of the claims. Words often do not carry with them mathematical precision. The present motion offers a clear illustration of that enduring fact. For example, the Court construed the term "socket" to mean "a structure that fits and holds onto an inserted part, so that the structure and the part are detachably connected to each other." (Op. & Order of Sept. 24, 2013, ECF No. 208 (hereinafter, "CC Order"), at 14.) Among other issues, this language left unresolved the question of whether the structure must "hold onto" the inserted part in every direction, or whether holding in five of six directions would suffice. The Court took evidence on this issue from the parties' experts, heard from the parties through briefing and oral argument, and ultimately clarified that its construction in fact did require holding in all directions: "[T]he Court has construed the term socket to require a 'fit and hold' connection with the pump – *i.e., the socket must grip the pump like a light bulb socket, electric socket or top of a mason jar.*" (Op. of Mar. 10, 2014, ECF No. 225 (hereinafter, "SJ Op."), at 25 (emphasis added).) It is certainly the Court's prerogative to clarify, or even change, a claim construction at any time prior to charging the jury. *Conoco, Inc. v. Energy & Envtl. Intern., L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) (district court may "revisit[] and alter[] its interpretation of the claim terms as its understanding of the technology evolves."). But TWW could not reasonably have anticipated in September of 2013 that this would be the result in March of 2014. Nor was TWW required to resolve all ambiguities against itself, and surrender its claims where it had both a good-faith argument for infringement and a technical expert saying that its claims remained viable. Intex's motion is based on hindsight, and the law does not impose on a litigant any duty to surrender a claim that it believes to be meritorious simply because a latent ambiguity might ultimately be resolved against it.

## II.     FACTUAL BACKGROUND

Intex initiated this suit on October 15, 2004, seeking declaratory judgments of noninfringement and invalidity as to TWW's U.S. Patent No. 6,793,469.  (First Am. Compl., ECF No. 4.) Intex also alleged that TWW procured its patent through inequitable conduct, but those allegations were dismissed at the pleadings stage. (Mem. Op. of Sept. 30, 2005, ECF No. 21.)

For three years, the parties proceeded through fact and expert discovery and, on November 19, 2007, Magistrate Judge Robinson conducted a claim construction hearing. After that hearing, Intex filed a Request for *Ex Parte* Reexamination with the U.S. Patent & Trademark Office ("PTO"). Subsequently, on May 1, 2008, after Judge Robinson issued her claim construction opinion largely in TWW's favor, and with TWW's motion for summary judgment of infringement on file, Intex moved to stay the case until the PTO resolved the reexamination. (Intex Mot. for Stay of Litigation Pending Reexamination, ECF No. 149.) Intex's motion for stay was granted over TWW's objection. (Order of Feb. 23, 2009.) Once the PTO finished its reexamination, the '469 patent emerged not only intact, but confirmed and entirely unscathed—a rarity in reexaminations.

Rather than proceed in parallel, only then did Intex object to the Magistrate's claim construction and urge an entire new round of claim construction briefing and oral argument. (*See* Plaintiff Intex Recreation Corp.'s Objections to the Magistrate Judge's March 28, 2008, Order Pursuant To LCvR 72.2(b) and Fed. R. Civ. P. 72, ECF No. 147.) Specifically, Intex contested two of the nine claim constructions that Judge Robinson had decided:  "socket" and "pump body." (*Id.*)

The Court issued a revised claim construction on September 24, 2013, changing the construction of "socket" and adopting the construction of "pump body" (with a clarification).

(CC Order at 1-2.) On March 10, 2014, the Court denied TWW's motion for summary judgment of infringement and granted Intex's motion for summary judgment of no infringement. (SJ Op. at 1-2.)

### III.     SUMMARY OF APPLICABLE LAW

The patent statute states that "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "Attorney fees are not to be routinely assessed against a losing party in litigation in order to avoid penalizing a party for merely defending or prosecuting a lawsuit, … and are awarded to avoid a gross injustice." *Revlon, Inc. v. Carson Prods. Co.*, 803 F.2d 676, 679 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 1018 (1986) (internal quotations and citations omitted). Even upon a finding of exceptionality, "there remains in every case [the district court's] freedom to exercise its discretion informed by the court's familiarity with the matter in litigation and the interest of justice." *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209, 1215 (Fed. Cir. 1987) (internal quotations and citations omitted). Factors such as the conduct of the parties, the tactics of counsel, and the closeness of the case, are properly considered by a district court in exercising its discretion. *J.P. Stevens Co., Inc. v. Lex Tex Ltd., Inc.*, 822 F.2d 1047, 1051 (Fed. Cir. 1987).

The Supreme Court recently addressed the standard for awarding fees under § 285. In *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749 (Apr. 29, 2014), the Court acknowledged that the award of fees is not to be viewed "'as a penalty for failure to win a patent infringement suit,' but as appropriate 'only in extraordinary circumstances.'" *Id.* at 1753 (*quoting Park-In-Theaters, Inc. v. Perkins*, 190 F.2d 137, 142 (9th Cir. 1951)). Fee-shifting is intended "to address unfairness or bad faith in the conduct of the losing party, or some other

equitable consideration of similar force, which made a case so unusual as to warrant fee-shifting." *Id.* (internal quotations and citations omitted).[2]

After recounting the Federal Circuit's delineation of tests for determining the award of fees under § 285, the Court held that "exceptional" means "uncommon, rare, or not ordinary," and that an exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigation position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[3] *Octane Fitness*, 134 S. Ct. at 1756. The Federal Circuit had held that fees "may be imposed against the patentee ***only if both*** (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1382 (Fed. Cir. 2005) (emphasis added). But the Supreme Court found the Federal Circuit's previous standard to be "overly rigid" and "inflexible," *Octane Fitness*, 134 S. Ct. at 1756; explaining that "a case presenting ***either*** subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award," *id.* at 1757 (emphasis added). Finally, the Court held that the movant must establish its entitlement to attorney fees by a preponderance of the evidence. *Id.* at 1758. In the companion case, *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 134 S. Ct. 1744 (Apr. 29, 2014), the Court added that a district court's decision to award, or not award, attorneys' fees is reviewable for abuse of discretion. *Highmark*, 134 S. Ct. at 1748

---

[2] *Park-In-Theaters* addressed the award of attorney fees under 35 U.S.C. § 70, the predecessor to § 285. But the Supreme Court noted that the recodification of § 70 to § 285 in 1952 did not substantively alter the meaning of the statute. *Octane Fitness*, 134 S. Ct. at 1753.

[3] Intex's motion is based on the substantive strength of TWW's litigation position following the Court's claim construction ruling. (*See* Mot. at 7-9.) Intex does not argue that TWW litigated the case in an "unreasonable manner." (*See id.*) However, Intex states in one place in its motion that "TWW set forth meritless infringement arguments *and did so in bad faith*, … ." (*Id.* at 7 (emphasis added).) This is wholly conclusory. Intex presents no evidence or argument that TWW litigated the case in bad faith, or in an unreasonable or vexatious manner. Thus, these six passing words cannot support a finding that fees are awardable to Intex based on any litigation misconduct by TWW.

(vacating and remanding Federal Circuit's reversal of district court award of attorneys' fees where district court concluded that patentee had "engaged in a pattern of vexatious and deceitful conduct throughout the litigation" and "maintained infringement claims [against Highmark] well after such claims had been shown by its own experts to be without merit and had asserted defenses it and its attorneys knew to be frivolous.").

### IV. TWW'S ARGUMENTS WERE NOT "EXCEPTIONALLY MERITLESS"

The issues in this case do not even approach the level of being "exceptionally meritless" such as to make this case "stand out from others." *See Octane Fitness*, 134 S. Ct. at 1751. This conclusion is supported by the following facts:

- In applying the Court's claim constructions, two independent experts in the field, Mr. Berninger and Dr. Dubowsky, reached different conclusions as to infringement despite the fact that there was no disagreement between them over the structure and operation of the accused products.

- The Court required 27 pages of detailed analysis in order to find for Intex, despite the fact that the dispute centered around a single claim term. (*See* SJ Op.)

- The Court considered 31 documents in order to reach its conclusions on summary judgment. (*See id.* at n.1 (listing documents considered).)

- The Court relied on analysis by TWW's expert, as well as by Intex's expert, in reaching its conclusions on summary judgment. (*Id.* at 10-14.)

- Even as to the contested "socket" limitation, Intex conceded, and the Court acknowledged, that it did not dispute part of Dr. Dubowsky's analysis concerning the proper "result" under the "function-way-result" test for infringement. (*Id.* at n.6.)

- While the Court stated that one argument TWW made was "meritless," that argument concerned the scope of the "fit and hold" requirement; specifically, whether "fit and hold" requires holding in all six axes, or whether holding in five out of six axes is sufficient. (*Id.* at 25.) The Court's claim construction simply did not address this specific issue (*see* Section V, *infra*), and thus, TWW cannot be faulted (or penalized) for not anticipating that the Court would ultimately clarify this issue in Intex's favor.

- The Court's opinion of no infringement under the doctrine of equivalents is not based on any "meritless" argument made by TWW, but rather on an alleged lack of sufficient detail in TWW's expert's report to adequately explain his function-way-result analysis. (*Id.* at 22-23.)

- The Court's opinion is based, in several places, on its determination of what a person of ordinary skill in the art of pneumatics would have found, backed up by citations to Intex's expert report. (*See, e.g., id.* at 15-17.) If TWW's arguments were in fact exceptionally meritless, there would have been no need to resort to (disputed) expert testimony to support the Court's conclusions.

There are additional reasons why the Court should find this case to not be exceptional under § 285. For example, earlier in the case, Intex took the same approach that it now contends warrants the penalty of fee-shifting. Specifically, as noted above, Judge Robinson in her claim construction adopted TWW's construction of "socket." (Mem. Op. & Order of Mar. 28, 2008 at 8, ECF No. 145.) Nevertheless, Intex's expert opined that the Intex products did not infringe even under TWW's construction of "socket." (Supp. Rpt. of J. Berninger (Jan. 25, 2011) at 3 ¶ 11, Ex. A ("Under [the Magistrate's and TWW's] definitions, the Intex designs … do not include a socket, and therefore do not infringe claims 14-17 of the '469 patent.").) Intex even moved for summary judgment of non-infringement under TWW's construction of "socket," stating:

> Intex also cross-moves for summary judgment of noninfringement, because even under the claim constructions set forth in the March 28, 2008 Order, there is no genuine issue of material fact that the accused Intex pumps do not infringe the asserted claims of U.S. Patent No. 6,793,469 ("the '469 patent"), either literally or under the doctrine of equivalents.

(Intex Recreation Corp.'s Mem. in Supp. of its Cross-Motion for Summ. J. of Noninfringement and Opp'n to Team Worldwide Corp.'s Mot. for Partial Summ. J. of Infringement at 1, ECF No. 155-2.) Having itself accepted that even adverse claim constructions do not necessarily resolve all ambiguity—let alone compel the losing party to surrender its claims or defenses—Intex cannot now credibly fault TWW for proceeding in the face of a single adverse claim construction. Nor, as Intex contends, was it "unreasonable for TWW to pursue those meritless arguments as aggressively as TWW did (*i.e.*, by filing a motion for summary judgment of infringement," causing Intex to "incur unnecessary attorneys' fees, costs, and expenses." (Mot. at

9, 5.) Intex did precisely the same thing in the face of an adverse construction, and cannot now challenge TWW's actions as "unreasonable."[4]

### V.     TWW CANNOT BE FAULTED FOR NOT FORESEEING THAT THE COURT WOULD CLARIFY ITS CLAIM CONSTRUCTIONS

The Court construed the term "socket" to mean "a structure that fits and holds onto an inserted part, so that the structure and the part are detachably connected to each other" (CC Order at 14), and "pump body" to mean "the main part of the electric pump and to be a separate and distinct element from the air outlet" (*id.* at 28). It was not reasonably foreseeable to TWW that the Court in its subsequent summary judgment order would apply, and clarify, these terms in a manner that favored Intex's arguments.

The first basis upon which the Court ruled against TWW was that the "housing" (which TWW equated to the claimed "socket") has to be part of the pump. (SJ Op. at 15-18.) Specifically, the Court found:

> no genuine dispute of fact as to this issue; it is clear that a person of ordinary skill in the field of pneumatics would view the housing in the accused devices to be part of the electric pump, not a distinct structural element. The Court therefore must conclude that the housing does not satisfy the socket limitation.

(*Id.* at 16; *see also id.* at 17 ("The inquiry is whether a person of ordinary skill in the art would view the components as together comprising a pump – not whether the individual components can be physically taken apart.").) However, the Court's construction of "pump body" does not explicitly require that the pump have a housing. In fact, the Court expressly rejected that requirement when Intex first proposed it. (CC Order at 28 (rejecting Intex's proposal that the

---

[4] To be sure, Intex may respond that it was ultimately vindicated in that the Court later reversed the Magistrate and adopted Intex's construction of "socket," but Intex had no way of knowing that would occur when it presented a new expert report and moved for summary judgment of non-infringement, rather than first appealing the Magistrate's order. Moreover, the same may eventually be true for TWW once the Federal Circuit has heard TWW's appeal.

main part of the pump must include a housing, and holding "the term 'pump body' refers broadly to 'the main part of the pump,' to be distinguished from the air outlet, and is not confined to the housing surrounding other parts of the pump.").) In reaching its conclusion on summary judgment, the Court thus implicitly altered its construction of "pump body" to include the requirement of a housing (thereby precluding the housing from being a "socket"). TWW cannot be faulted—let alone penalized—for advancing an infringement argument that was based on a plain reading and application of the Court's construction of "pump body."

Next, the Court concluded that Intex's housing cannot meet the construction of "socket" because (1) if the housing is turned upside down, the pump components falls out (SJ Op. at 18); (2) screws are used to hold the pump components in the housing (*id.* at 18-19); and (3) disassembly (such as by removing screws) is not "detachably connecting" (*id.* at 19). Each of these findings required the Court to apply its construction of "socket" in a way not expressly encompassed by the Court's original construction of that term, thus changing or clarifying that construction. For example, Intex does not dispute that the housing in the accused products holds the pump components in five out of six directions (left-right, up-down, and inwardly), as TWW had argued. Intex's argument, ultimately accepted by the Court, was that "fit and hold" requires restricting the pump's movement in all directions, and because the pump components fall out of the housing when the pump is turned upside down, the "fit and hold" requirement was not met. (*Id.* at 18.) To arrive at this conclusion, the Court implicitly modified its construction of "socket" to include the requirement of holding ***in every direction***.

Similarly, in basing its non-infringement conclusion on the fact that screws "are necessary to create a tight fit" (*id.*) between the pump components and the housing, the Court added the previously-unstated requirement that the "fit and hold" requirement cannot be achieved through the use of screws. Likewise, in distinguishing between "detachably

connecting" and "disassembly" (*id.* at 19), the Court relied on a distinction that has no support in the intrinsic evidence and was not mentioned in the Court's claim construction opinion. In doing so, the Court added to its construction of "socket" the requirement that "detachably connected" means via manual effort as opposed to with the aid of a tool. (*Id.* (holding that removing screws with a screwdriver "is quite different in form from" manual arrangements such as a light bulb or mason jar).)

With regard to both of these points, the Court made its modification explicit in the summary judgment opinion: "the Court has construed the term socket to require a 'fit and hold' connection with the pump – *i.e., the socket must grip the pump like a light bulb socket, electric socket or top of a mason jar*." (*Id.* at 25 (emphasis added).) The highlighted portion of this quote was not part of the Court's original claim construction. Likewise, the distinction between arrangements that are "time-consuming" versus ones that are "seconds-long" was also not part of the Court's original construction of "socket" until that distinction was made in the summary judgment opinion. (*Id.* at 19.) Not only were these applications of, and revisions to, the constructions of "pump body" and "socket" not reasonably foreseeable, but they introduced further requirements into the claims that were not reflected in the words of the original claim construction. Accordingly, TWW should not be penalized for basing its infringement case on the explicit wording of the original claim constructions, and it cannot fairly be said that TWW pressed arguments it knew to be exceptionally meritless.

## VI. TIMING OF THE COURT'S DECISION

The last chapter in this litigation has not yet been written. On April 29, 2014, TWW filed its Notice of Appeal to the Federal Circuit. (ECF No. 232.) With respect, TWW will urge the Federal Circuit to reverse, *inter alia*: (1) the Court's construction of "socket"; (2) the Court's granting of summary judgment of no literal infringement; and (3) the Court's granting of

summary judgment of no infringement under the doctrine of equivalents. Thus, while the present motion should be denied on the basis of the foregoing arguments, if the Court is not inclined to do so, it would in any event be premature for the Court to award fees when the Federal Circuit may yet find TWW's arguments to be correct, and not "meritless."

## VII. CONCLUSION

For the foregoing reasons, TWW respectfully requests that the Court deny Intex's motion for attorney fees, costs, and expenses.

Dated: June 6, 2014

FISH & RICHARDSON P.C.

By: /s/ Andrew R. Kopsidas

Andrew R. Kopsidas (#476237)
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Fl.
Washington, D.C. 20005
Telephone: 202-783-5070
Facsimile: 202-783-2331

Kurt L. Glitzenstein (*pro hac vice*)
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: 617-542-5070
Facsimile: 617-542-8906

Attorneys for Defendant
TEAM WORLDWIDE CORPORATION