UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

INTEX RECREATION CORP.,

    *Plaintiff/Counterclaim-Defendant*,

v.

TEAM WORLDWIDE CORPORATION,

    *Defendant/Counterclaim-Plaintiff.*

CASE NO.  1:04 CV 01785 (PLF/DAR)
Judge Paul L. Friedman
Mag. Judge Deborah A. Robinson

**ORAL ARGUMENT REQUESTED**

**INTEX RECREATION CORP.'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR FEES, COSTS, AND EXPENSES UNDER 35 U.S.C. § 285**

TWW has not provided any basis for denying Intex's Motion for Fees, Costs, and Expenses under 35 U.S.C. § 285 (Dkt. Nos. 230, 234).  Rather, TWW set forth multiple arguments that have no bearing on the Court's analysis under 35 U.S.C. § 285, as well as arguments that underscore the need to remedy Intex for TWW's exceptionally meritless arguments.  Additionally, TWW now argues, for the first time, that the Court's claim construction included a "latent ambiguity" that precludes TWW from being liable for pressing its baseless infringement arguments.  However, TWW's "latent ambiguity" argument is belied by TWW's own arguments in this case, as well as the clear record evidence.

The recent Supreme Court decisions in *Octane Fitness v. Icon Health & Fitness* and *Highmark v. Allcare Health* counsel that TWW's behavior is precisely the type of behavior that Section 285 is designed to prevent, and also provide district courts with a much easier path to award fees when this type of behavior occurs.  Accordingly, Intex respectfully requests that the Court grant Intex's Fees Motion and that the Court set a schedule for additional briefing to determine the appropriate remedy.

**I.    TWW Failed to Objectively Assess the Merits Following Claim Construction and, as a Result, Asserted Baseless Infringement Theories**

The case law is simple and straightforward: parties who receive a negative claim construction are responsible for objectively evaluating the merits of their arguments and determining the appropriate course of action.  *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) ("While an adverse claim construction generally cannot, alone, form the basis for an exceptional case finding . . . a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, *especially after an adverse claim construction*." (emphasis added) (citations omitted)).  Thus, when a party fails to objectively assess the merits of its case and instead pushes "exceptionally

meritless" arguments, the party runs the risk of an adverse ruling under 35 U.S.C. § 285. *See Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1757 (2014) (holding that "a case presenting either subjective bad faith *or* exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award."); *see also id.* at 1756 (noting that considerations such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" should be weighed when addressing a fees motion under 35 U.S.C. § 285).[1]

---

[1] Since the Supreme Court issued its decisions in *Octane Fitness* and *Highmark*, four district courts have found patentees liable for fees, costs, and/or expenses under 35 U.S.C. §285:
- *Intellect Wireless, Inc. v. Sharp Corporation*, Civ. No. 10 C 6763, 2014 WL 2443871 (N.D. Ill May 30, 2014) (finding that inequitable conduct during prosecution warranted finding the case "exceptional");
- *Classen Immuntherapies, Inc. v. Biogen Idec*, Civ. No. WDQ-04-2607, 2014 WL 2069653 (D. Md. May 14, 2014) (patentee's baseless infringement arguments rendered case exceptional);
- *Home Gambling Network Inc. v. Piche*, Civ. No. 2:05-cv-610-DAE, 2014 WL 2170600 (D. Nev. May 22, 2014) (patentees infringement arguments that ignored prosecution history disclaimer issues were improper and contributed to finding case exceptional); and
- *Lumen View Tech., LLC v. Findthebest.com, Inc.*, Case No. No. 13 CIV 3599 (DLC), 2014 WL 2440867 (S.D.N.Y May 30, 2014) (granting fees and expenses against plaintiff in view of plaintiff's failure to conduct an adequate pre-suit infringement investigation and the undisputed facts as to how the accused products functioned in a non-infringing manner).

Two cases have been remanded for reconsideration of a prior denial of a motion for fees and expenses under 35 U.S.C. § 285:
- *Kobe Properties Sarl v. Checkpoint Sys., Inc.*, No. 13-788, 134 S.Ct. 2134 (May 5, 2014) (remanding to the Federal Circuit after the Federal Circuit, pre-*Octane Fitness* and pre-*Highmark*, reversed district court's decision to award fees); and
- *Site Update Solutions, LLC v. Accor North America, Inc.*, No. 2013-1458, 2014 WL 1910424 (Fed. Cir. May 14, 2014) (remanding district court's denial of fees in view of *Octane Fitness*).

And three district courts have denied motions under Section 285 since *Octane Fitness* and *Highmark*; however, all three cases are easily distinguishable from the present case:
- *CreAgri, Inc. v. Pinnaclife, Inc.*, Case No. 11-cv-6635, 2014 WL 2508386 (N.D. Cal. June 3, 2014) (although the Court found the asserted patents invalid, the basis for defendant's motion under Section 285 was on plaintiff's allegedly meritless infringement arguments; however, the Court never addressed plaintiff's infringement arguments because they were moot in view of the invalidity rulings. The Court also found that plaintiff substantially prevailed at the claim construction phase, which would tend to show that its infringement positions were not objectively baseless.);
- *Bianco v. Globus Medical, Inc.*, Civ. No. 2:12-cv-00147-WCB, 2014 WL 1904228 (E.D. Tex. May 12, 2014) (holding that although the new standard requires evidence of either meritless claims *or* bad faith, the case could not deemed exceptional given that prior to *Octane Fitness* and *Highmark*, the court found there was neither evidence of meritless claims nor of bad faith); and
- *Eon Corp. IP Holdings, LLC v. FLO TV Inc.*, Civ. No. 10-812-RGA, 2014 WL 2196418 (D. Del. May 27, 2014) (finding that, although the plaintiff's claims were all deemed invalid as indefinite and the damages

Here, the factual record and the controlling law were clear. There was no genuine dispute as to the structure of Intex's Accused Pumps (*see* Dkt. No. 225 at 8), and this case did not present any unique legal questions; therefore, there was no objectively reasonable basis for TWW to assert the infringement theories it did. Simply put, TWW has to live with the consequences of its decision to assert "exceptionally meritless" and objectively unreasonable infringement claims.

## II. TWW's "Latent Ambiguity" Argument is Unsupported by the Record

TWW's brief in opposition to Intex's fees motion is the first time TWW has contended there was a "latent ambiguity" with Court's construction of "socket." According to TWW, the Court clarified its construction of "socket" in its summary judgment opinion (Dkt. No. 225, "SJ Opinion"), and TWW apparently did not understand the weakness of its case until the Court provided this clarification. Therefore, according to TWW, there is no basis to find this case is "exceptional" under 35 U.S.C. § 285.

There is a significant and important difference between TWW simply disagreeing with the Court's construction of "socket" and there being an actual "latent ambiguity" with that construction. TWW's disagreement with the Court's construction and its refusal to accept the same is readily apparent throughout the record in this case and is ultimately the fundamental problem with TWW's infringement theories since November 1, 2013. Accordingly, TWW's "latent ambiguity" argument should be rejected and Intex's motion should be granted.

The record is replete with examples showing that TWW has always understood the Court's construction of "socket." The first of which is what is missing from the record, namely, a request from TWW for reconsideration or clarification of the Court's Markman Order (Dkt.

---

pool was small, the case was not exceptional given, among other reasons, that the Court's decision on the indefiniteness issue "was not an easy one").

4

No. 208). Had TWW truly been confused or thought the Court needed to clarify a point, it could have requested reconsideration or sought clarification from the Court. Instead, TWW served a new expert report that did not follow the Court's claim construction, and then pressed exceptionally meritless arguments on summary judgment. That is not the proper way to handle an adverse ruling on claim construction, and TWW must live with the consequences of its actions.

Second, during summary judgment, TWW argued that the "fit and hold onto an inserted part" requirement of the Court's "socket" construction should be interpreted more broadly than the plain language of the Court's construction. That is, according to TWW, a "socket" is a structure that holds an inserted part in "five of six directions," like a trash can, a bowl, or any other opening or hollow, instead of in all directions, as the Court's claim construction requires. In rejecting TWW's argument as, among other things, "meritless" (Dkt. No. 225 at 25-26),[2] the Court concluded that TWW was simply reasserting, "in disguised form," its previously unsuccessful claim construction argument (*id.* at 26). Thus, the fact that TWW was attempting to reargue its prior claim construction shows that TWW fully understood the Court's construction of "socket" and the negative impact that construction had on TWW's infringement theories; TWW understood the Court's construction, it just did not agree with it, and it is simply disingenuous for TWW now to claim the Court's construction was ambiguous.

Third, TWW argues that, in its SJ Opinion, the Court "clarified that its construction [of "socket"] did require holding in all directions." Dkt. No. 235 at 2 (citing Dkt. No. 225 (SJ Opinion) at 25). However, the logic and reasoning provided by the Court in its Markman Order

---

[2] Although TWW notes in its opposition brief that the Court described TWW's arguments as meritless in one portion of its SJ Opinion, TWW failed to address the Court's numerous additional criticisms of TWW's arguments, all of which collectively show the unreasonableness of TWW's infringement allegations since November 1, 2013. *See* Dkt. No. 234 at 2-5 (summarizing the Court's negative reactions to TWW's infringement arguments).

(Dkt. No. 208) to support its construction of "socket" has never changed, as the Court applied the same logic and reasoning to reject TWW's unreasonable infringement positions and grant Intex's motion for summary judgment of non-infringement.  In fact, the only difference between the two Orders is that, in its SJ Opinion, the Court added one additional example of the type of mechanical socket connection covered by the asserted claims:

| **Markman Order** | **SJ Opinion** |
|---|---|
| "Intex's proposed construction of 'a structure that fits and holds onto an inserted part, so that the structure and the part are detachably connected to each other,' **is consistent with how the term typically is used when describing mechanical connections, such as a light bulb socket, or an electric socket.  In these cases, a socket is part of a detachable connection**."<br><br> - Dkt. No. 208 at 14 (emphasis added); *see also id.* at 17 n.8 (using "fitting" and "gripping" synonymously). | "In the claim construction proceedings, the parties and the Court used the phrase 'to fit and hold onto' as meaning 'to grip,' **akin to a light bulb socket that fits and holds onto a light bulb, or electric socket that fits and holds a plug, or, as described at oral argument, a lid that fits and holds onto a mason jar**."<br><br> - Dkt. No. 225 at 18 (emphasis added).<br><br>"[T]he Court has construed the term socket to require a 'fit and hold' connection with the pump—*i.e.*, **the socket must grip the pump like a light bulb socket, electric socket or top of a mason jar**."<br><br> - *Id.* at 25 (emphasis added). |

Therefore, even if, as TWW contends, an ambiguity existed after the Court's Markman Order (which it did not), nothing about the Court's SJ Opinion could reasonably be deemed to clarify the Court's Markman Order.  TWW's argument that the Court somehow clarified this "latent ambiguity" with the language above simply does not make sense, and TWW cannot use this unreasonable argument now as an excuse for why it pressed baseless infringement arguments after the Court ruled against TWW during claim construction.[3]  Moreover, the fact that TWW

---

[3] TWW cites *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006) for the proposition that a district court can clarify or alter its claim construction "as its understanding of the technology evolves."  Tellingly, though, TWW never contends that this Court was confused about the technology in this case.  Indeed, there is no evidence of such, as the structure and the function of Intex's accused pumps are undisputed.

apparently needed the Court to repeat its reasoning and logic for this relatively simply mechanical component does not absolve TWW of its responsibility to assert sound, reasonable infringement theories in this case.

Fourth, during summary judgment, TWW made several arguments that the differences between the structure and function of Intex's accused products versus what was required to prove infringement under the Court's construction of "socket" was simply a matter of "semantics." *See* Dkt. No. 217 at 2, 10. But even if that were true (which it is not, as the Court's SJ Opinion made clear), by arguing only a difference in "semantics," TWW necessarily acknowledged that it understood the Court's construction. Indeed, it is impossible to argue a difference in semantics if one does not truly understand the meaning of the language at issue.

Finally, the term "socket" as used in the '469 Patent and the Court's construction of the same are simple, straightforward, and consistent with the way that term is typically used in the context of mechanical connections. As the Court found in its Markman Order, a "socket" is a "structure that fits and holds onto an inserted part so that the structure and the part are detachably connected to each other." Dkt. No. 208 at 25. And as the Court has consistently explained, examples of this type of simple mechanical connection include a light bulb socket, an electric socket, and the pump-and-socket connections described and claimed in the '469 Patent (the "socket embodiments"). *See* Dkt. No. 208 (Markman Order) at 14-25; Dkt. No. 225 (SJ Opinion) at 18, 25. Consistent with the "fit and hold onto an inserted part" definition, in each of these connections, once the inserted part is connected to the socket, the part *does not move*. Indeed, that is the fundamental purpose of this type of socket: to hold onto the inserted part so that it can function (*e.g.*, turning on a light bulb, creating an electrical connection between a plug and an outlet, or, in this case, inflating and/or deflating an airbed).

7

There is simply no support for TWW's efforts to inject confusion and uncertainty into the analysis by asserting that the claimed "socket" needs to only "hold" its inserted part in some, but not all, directions. There is nothing in the Court's claim construction order that indicates TWW's view of "socket" is correct; in fact, the Court explicitly rejected TWW's proposed construction—"an opening or hollow that forms a holder for something"—which describes a structure that would restrict movement of an inserted part in some, but not all, directions. Moreover, TWW has not cited any evidence to support its arguments—other than the November 1, 2013 expert report of TWW's expert, Dr. Dubowsky, which was found to be plainly inconsistent with the record and the Court's construction (Dkt. No. 225 at 22-26).

To the contrary, the actual record evidence is clear. The plain language of the asserted claims and every socket embodiment of the '469 Patent uses the word "socket" consistent with the well-understood meaning the Court gave that term. None of the socket embodiments of the '469 Patent require extraneous structures or external forces to hold the pump in place once it is connected to the socket—the socket holds onto the pump at all times and in all directions *unless and until* the pump is detached from the socket (just like a light bulb can be removed from a light bulb socket or an electric plug can be removed from an electric socket).[4] Said another way, there is nothing in the '469 Patent that indicates the term "socket" was ever used inconsistent with its well-understood meaning in the context of mechanical connections. Yet that is precisely what TWW's entire infringement theory was based on—a usage of "socket" that was inconsistent with

---

[4] *See* '469 Patent, Figures 2 – 12 and Col. 2:50 – Col. 6:25 (the socket embodiments). Additionally, TWW argued at the summary judgment hearing (for the first time) that the first embodiment of the '469 Patent requires the user to hold the pump in place while inflating the mattress. However, the Court rejected this argument as "plainly incorrect," noting, among other problems with TWW's argument, that TWW had already asserted that the "claimed invention allows the user to inflate or deflate the mattress *without* having to manually hold the electric pump in place." *See* Dkt. No. 225 (SJ Opinion) at 26 (emphasis in original) (citing TWW's claim construction briefing). Thus, the fact that TWW had previously acknowledged what was meant by the "socket" limitation—*i.e.*, that TWW understood the meaning of that limitation—further supports finding that TWW's infringement arguments since at least November 1, 2013 were "exceptionally meritless."

the evidence and the Court's construction. TWW made the decision to assert infringement arguments that ignored the intrinsic evidence and the Court's claim construction, and TWW must accept the consequences of that decision.

### III. TWW's Remaining Arguments Have No Bearing on the Court's Analysis Under 35 U.S.C. § 285

In its opposition brief, TWW raised several arguments that either have no bearing on the Court's analysis under 35 U.S.C. §285 or that instead support Intex's Fees Motion. Intex addresses each of those arguments, below.

#### A. The bullet-pointed list of arguments on pages 6 and 7 of TWW's brief are either irrelevant or they support Intex's Fees Motion

On pages 6 and 7 of its brief, TWW made eight separate bullet-pointed arguments that it contends provide independent grounds for denying Intex's Fees Motion. Intex addresses each of TWW's eight arguments, below:

- TWW contends that because there were competing expert opinions, the Court should not find that TWW asserted exceptionally meritless infringement arguments. However, the fact that competing experts reached different infringement conclusions despite not disputing the structure and operation of the accused pumps is irrelevant to whether TWW's infringement theories were exceptionally meritless since November 1, 2013. Moreover, TWW's expert reached an infringement opinion by ignoring the Court's clear, straightforward claim construction, and had TWW's expert properly applied the Court's claim construction, he could not have reached the same conclusions. Accordingly, the reason there were competing expert reports in this case—*i.e.*, because TWW's expert ignored the Court's construction and Intex had to respond with a competing expert report—supports Intex's argument that TWW's infringement arguments were "exceptionally meritless" and that Intex should be able to recoup the fees and expenses it incurred in having to rebut those arguments.

- TWW contends that the length of the Court's SJ Opinion and the number of documents the Court considered when issuing its SJ Opinion (addressed in the second and third bullet points in TWW's brief) somehow favors TWW on the issue of whether TWW's arguments were "exceptionally meritless." The problem, however, is that the Court's non-infringement analysis was lengthy because TWW asserted *multiple* baseless arguments. Indeed, Intex made this same observation in its reply brief in support of its motion for summary judgment, wherein Intex had to address all of TWW's straw men arguments, many of which conflicted with each other. *See* Dkt. No. 220 at 6-7. Thus,

US.54354293.01

contrary to TWW's position, the fact that the Court engaged in a thorough analysis of all of TWW's straw men arguments and rejected every single one of those arguments shows the exceptionally meritless nature of those arguments.

- TWW's contention that "[t]he Court relied on *analysis* by TWW's expert . . . in reaching its conclusions on summary judgment," is incorrect. *See* Dkt. No. 235 at 6 (emphasis added) (citing Dkt. No. 225, SJ Opinion, at 10-14). In this portion of the SJ Opinion, the Court simply recited the undisputed facts of the case, summarized the structure and operation of Intex's accused pumps, and included photographs and illustrations of the same. Not once did the Court ever rely on any "analysis" performed by TWW's expert, Dr. Dubowsky. In fact, the opposite is true. As noted in Intex's opening brief in support of its Fees Motion, the Court repeatedly rejected Dr. Dubowsky's analysis. *See* Dkt. No. 234 at 2-5.

- TWW relies on the fact that Intex did not dispute one portion of Dr. Dubowsky's analysis under the doctrine of equivalents; however, that fact is irrelevant. The doctrine of equivalents analysis required Dr. Dubowsky to apply a three-part test. Intex explicitly disputed his analysis for two parts of that test, and the Court agreed with Intex when it granted Intex's motion for summary judgment of non-infringement. *See* Dkt. No. 225 (SJ Opinion) at 19-26.

- TWW contends that the Court's claim construction "simply did not address" the "specific issue" that TWW raised regarding whether the "fit and hold onto the inserted part" requirement of the Court's construction required the "socket" to hold onto its inserted part in all directions, and, therefore, that "TWW cannot be faulted (or penalized) for not anticipating that the Court would ultimately clarify this issue in Intex's favor." Dkt. No. 235 at 6. However, as described in Section I, above, the Court's construction did in fact address this point, as it is necessarily part of the Court's construction and reasoning supporting the claim construction.

    o TWW also claims that the Court's SJ Opinion modified the construction of "pump body" to now require a housing, and that TWW "cannot be faulted—let alone penalized—for advancing an infringement argument that was based on a plain reading and application of the Court's construction of 'pump body.'" *See* Dkt. No. 235 at 8-9. But this argument suffers the same flaws as TWW's bullet-point argument, namely, that the Court never modified its construction. Moreover, and perhaps more importantly, TWW's argument that its infringement position was based on the plain meaning of "pump body" is disingenuous. Regardless of how TWW wants to characterize its approach to infringement, the plain language of the claims is clear: the same structure cannot be both part of the pump body and also the claimed socket. *Becton Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010).[5]

---

[5] TWW also attempted to argue that the Court modified the "detachably connected" portion of its construction. *See* Dkt. No. 235 at 9-10. Once again, the Court's original Markman Order was clear, and it should have been readily apparent, given the Court's logic and reasoning, what was required by the Court's construction.

10

- TWW contends that the fact that its expert failed to put forth a sufficient opinion under the doctrine of equivalents does not make the summary judgment phase of the case "exceptionally meritless." Intex strongly disagrees. Since TWW chose to assert an infringement theory under the doctrine of equivalents, it was TWW's burden to put forth a legally viable argument and provide supporting evidence to carry its burden. However, as the Court made clear, TWW failed to do either. *See* Dkt. No. 225 at 19-26. Accordingly, Intex should recover the fees and expenses it incurred in responding to TWW's exceptionally meritless arguments.

- Finally, TWW argues that because the Court cited to Intex's expert's non-infringement opinion regarding the conclusions one of ordinary skill in the art for this case would have reached, TWW's arguments cannot be deemed "exceptionally meritless." That is, TWW contends that it should not be forced to pay the fees and expenses Intex incurred in rebutting TWW's arguments because the Court applied the appropriate legal standards when issuing its SJ Opinion. Such an argument is in and of itself exceptionally meritless. First, it is black letter patent law that a Court must analyze infringement from the viewpoint of a person of ordinary skill in the art.[6] Second, the portion of the Court's SJ Opinion that TWW cites for this bullet point (Dkt. No. 225 at 15-17) made a very simple, yet important observation for this case, namely that when a patent claim identifies elements separately, those elements are "'distinct component[s]' of the patented invention.'" *See* Dkt. No. 225 at 15-16 (quoting *Becton Dickinson*, 616 F.3d at 1254). That is an important rule of law in this case and also relevant to the issues TWW raised in its last bullet point; one of the fundamental problems with TWW's infringement theory was that it failed to accept the consequences of how the asserted claims of the '469 Patent were drafted—requiring a pump "connected to" a separate socket—and instead contended that the housing portion of the Intex accused pumps was also the claimed socket.

As set forth above, none of the excuses TWW makes for its failure to properly assess the merits of its infringement arguments suffice to deny Intex's Fees Motion. To the contrary, and as explained above, many of the points TWW attempts to make in the eight bullet points in its opposition brief underscore the reasons why the Court should grant Intex's motion and award Intex its reasonable fees and expenses since at least November 1, 2013.

---

[6] *See, e.g.*, *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1361 (Fed. Cir. 2008) (summarizing the infringement and validity issues that are "analyzed in great part from the perspective of a person of ordinary skill in the art") (citations omitted).

11

B.  **Magistrate Judge Robinson's claim construction provided Intex with a non-infringement position on which it prevailed**

TWW criticizes Intex as being hypocritical because Intex previously moved for summary judgment of non-infringement after Judge Robinson adopted TWW's proposed claim constructions and construed "socket" as an "opening or hollow that forms a holder for something" and "pump body" as "the main part of the pump." However, even under those claim constructions, as well as Judge Robinson's analysis that "the electric pump refers to everything including the housing" (Dkt. No. 145 at 9), the Intex Accused Pumps did not infringe; the housing in the Accused Pumps that TWW contended was the "socket" under Judge Robinson's construction was part of the pump itself and, therefore, could not also be the claimed socket. *See, e.g.*, Dkt. No. 155-2 at 2. Thus, Intex is not being hypocritical. Rather, Intex did what it is now criticizing TWW of failing to do—Intex read and applied the Court's construction and the reasoning and logic supporting it and used the same to support its non-infringement position. By comparison, here, TWW ignored the Court's construction of "socket" and the logic and reasoning the Court provided when construing that term, which, as noted above, is the same logic and reasoning it used in its SJ Opinion to reject TWW's many straw men arguments.

C.  **The timing of TWW's appeal relative to the present motion is irrelevant**

Finally, in Section VI of its brief, TWW contends that the timing of TWW's appeal to the Federal Circuit should impact the Court's analysis of Intex's Fees Motion. TWW misses the point. The issue here is whether TWW's arguments and litigation positions since at least November 1, 2013 were "exceptionally meritless" in view of the Court's Markman Order. Said another way, was it objectively reasonable for TWW to: (1) serve a supplemental expert report that was not based on the Court's construction but which Intex was nevertheless required to respond to; (2) assert infringement arguments based on that expert report, which were rejected by

12

the Court as "meritless," for suffering "fatal problems," as making "no sense," and as being "plainly incorrect" and "directly contradicted" by the '469 Patent (Dkt. No. 225 (SJ Opinion) at 15-17, 23-26); and (3) do the foregoing instead of first seeking reconsideration of the Court's rulings in its Markman Order and/or stipulating to non-infringement and appealing to the Federal Circuit? The answer is no. Effectively, the parties are currently in the same position that they could have otherwise been in—*i.e.*, briefing issues on appeal at the Federal Circuit—had TWW not wasted valuable time and resources pressing its baseless infringement theories since at least November 1, 2013. TWW has to live with the consequences of its decision to proceed in the manner it did, and Intex should recoup the unnecessary fees and expenses it incurred addressing TWW's exceptionally meritless arguments since at least November 1, 2013.

## IV.   Conclusion

Shortly after the Court issued its Markman Order, Intex advised TWW that it should stipulate to non-infringement and noted the same in the Joint Status Report filed on November 1, 2013. *See* Dkt. No. 209 at 2 (noting that "based on the Court's constructions of "socket" and "pump body," TWW should stipulate to non-infringement and, if it wishes to continue litigating this matter, do so at the appellate court."). But TWW pressed on, requiring a new round of expert reports, exchange of discovery information, three rounds of summary judgment briefing, and a summary judgment hearing. And instead of putting forth reasonable infringement arguments, TWW ignored the Court's claim construction and raised multiple conflicting straw men arguments. *See* Dkt. No. 220 at 6-7 (noting that "TWW set[] up multiple straw men arguments in an effort to support its infringement theories and create fact issues," and that regardless of which straw men argument TWW pursued, "summary judgment of non-infringement should be granted."). The Court agreed, finding that TWW's arguments were

13

"meritless," that they suffered "fatal problems," that they made "no sense," and that they were "plainly incorrect" and "directly contradicted" by the '469 Patent.  Now, TWW feigns confusion over the Court's claim construction and relies on its unnecessary expert report and its myriad meritless arguments—all of which required significant briefing, argument, and analysis by Intex and the Court—as an excuse for its baseless decision to press forward here instead of at the Federal Circuit.

The *Octane Fitness* and *Highmark* decisions not only teach that TWW's conduct is precisely the type of behavior Section 285 is designed to prevent, those decisions also provide district courts with a much easier path to award fees when this type of behavior occurs.  Accordingly, Intex respectfully requests that the Court grant its Motion for Fees, Costs, and Expenses and set a timeline for additional briefing to determine the proper amount Intex should be awarded under 35 U.S.C. § 285.

Dated:  June 20, 2014                                           Respectfully submitted,

                                          /s/  Andrew M. McCoy
Gerald F. Ivey (#367009)
Edward J. Naidich (#481649)
Troy E. Grabow (#475013)
Finnegan, Henderson, Farabow,
 Garrett & Dunner, LLP
901 New York Ave., NW
Washington, DC  20001-4413
Ph:     (202) 408-4000
Fax:    (202) 408-4400
Email:  gerald.ivey@finnegan.com
              ed.naidich@finnegan.com
              troy.grabow@finnegan.com

R. Trevor Carter (*pro hac vice*)
Andrew M. McCoy (*pro hac vice*)
Faegre Baker Daniels LLP
300 N. Meridian St., Suite 2700
Indianapolis, IN  46204

       Ph: (317) 237-0300
       Fax: (317) 237-1000
       Email: trevor.carter@faegrebd.com
          andrew.mccoy@faegred.com

*Counsel for Plaintiff, Intex Recreation Corp.*